ALEXANDER ANDERSON v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.[1]

January 31, 1902.

Nos. 12,803—(129).

**Railway—Stock Yards—Nuisance.**

The provision of G. S. 1894, § 2710, requiring railroad companies doing business in this state to furnish shippers of live stock, horses, cattle, sheep, etc., with proper facilities to convey and transport the same, does not authorize such companies to maintain stock yards in an improper manner, so as to constitute a nuisance, to the injury of adjacent property owners.

**Verdict—Evidence.**

Evidence in this case considered, and *held* to justify a verdict for damages in behalf of plaintiff for injuries sustained by him through the maintenance of stock yards in an improper and unhealthy manner adjacent to his family residence.

**Excessive Damages.**

*Held*, that a verdict of $352 for continuance of a nuisance in the maintenance of such stock yards for a period of more than four months is not excessive.

Action in the district court for Freeborn county to recover $1,000 damages for the creation and maintenance of a nuisance by defendant at its stockyards in the city of Albert Lea. The case was tried before Kingsley, J., and a jury, which rendered a verdict in favor of plaintiff for $352. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*H. H. Field* and *H. C. Carlson*, for appellant.

*H. H. Dunn* and *Morgan & Meighen*, for respondent.

LOVELY, J.

Plaintiff claimed damages for a nuisance alleged to have been kept by defendant on its right of way adjacent to his living lot and residence, in the city of Albert Lea. Under proper issues the cause was tried to the court and a jury. Plaintiff recovered a

[1] Reported in 88 N. W. 1001.

85 M.—22

verdict. After the denial of a motion for a new trial, defendant appeals to this court.

We are required, upon the verdict, to hold that the evidence establishes that defendant erected stock yards on its right of way within sixty feet of plaintiff's family dwelling, in a populous part of the city, and maintained them from August 18 until December 23, 1899, in such an unclean and filthy condition that noxious smells and impure odors were being continually emitted therefrom, so as to interfere with the comfort and enjoyment of plaintiff's home, and the health of himself, as well as of the members of his family. These stock yards were erected and used for the purpose of receiving and shipping cattle, hogs, and live stock over defendant's road. They consisted of several pens, and covered an area of ten by twelve rods; being so situated with reference to the defendant's grade and the declining ground from plaintiff's house that it was impossible to secure drainage therefrom. It does not appear from the evidence that any alleviation of the evils was practically accomplished, but the unhealthful material naturally accumulated in such a place was seldom removed. Dead animals were allowed to remain an unusual and improper length of time and became putrid, which made the daily life of plaintiff and his family unbearable, and fully justified a verdict in his favor.

Defendant complains that it was prejudiced by the action of the jury in two respects: First, in arriving at their award upon an improper basis of compensation; second, excessive damages, given under the influence of passion and prejudice. So far as we apprehend defendant's assignments in these respects, we are unable to find any just ground for criticism of the orders of the trial court in the admission of testimony. The range of evidence covered a wide scope, embracing a full description of the manner in which the stock yards were conducted, also the character of the nuisance created and maintained, with the opinions of persons living in the neighborhood as to the diminution of the value of the use of plaintiff's dwelling occasioned by defendant's misconduct.

The claim of defendant is rested, however, upon the theory that it had the right to select any place on its right of way for the maintenance of yards for reception and shipment of stock. This

claim is based upon the provision of the statute which provides that railroad companies may be required to furnish facilities for that purpose. G. S. 1894, § 2710. We have no hesitation in holding that this statute does not authorize the erection and maintenance of a nuisance. We cannot concede that a railroad company in the conduct of its business, may create malodorous and noxious conditions on its own property so near the private dwellings of citizens as unnecessarily to interfere with the health of the inmates; for, if it be admitted that the business so carried on was a nuisance per se, it would then be our duty, notwithstanding the statute referred to, to say that it was a question of fact on the evidence whether its acts in that respect did not subject it to damages. The well-known maxim, "Sic utere tuo ut alienum non lædas," so well understood, so often applied, is essential to civilization and common decency. It is a very elementary maxim, but the contention for defendant necessarily suggests it as the best answer to be made to such a claim.

It is but justice to the learned counsel for the defendant to state that his claim is that the record indicates that damages for the maintenance of the stock yards, irrespective of the manner in which they were conducted, are claimed to have been allowed by the court and awarded by the jury. We have carefully examined the evidence, and find no substantial justification for this theory. The complaint charges that the defendant has wrongfully, etc., kept and maintained cattle pens, hog pens, and large quantities of horses, cattle, and other live stock there, and during all such times has negligently and wrongfully failed and neglected to remove or carry away the filth and manure therefrom, etc. Upon this allegation the claim was made for plaintiff that it was the manner of conducting the stock yards that constituted the nuisance, but it must be apparent that, under any view, the method in which the yards were run was inseparable in proof from the existence of the improper conditions for which damages could be recovered. Obviously, there can be no other way in which a nuisance can be proved than to show the facts. If the business is a lawful one and properly conducted, proofs of a distinction between its actual existence and the manner in which it is operated

is impossible under the ordinary methods by which issues of fact are tried in courts of law, except through appropriate instructions from the court to the jury. A review of the charge of the learned trial court in this case discloses that defendant received at its hands as favorable instructions as it was entitled to in this respect. The jury were substantially told by the court that the defendant had a right to maintain stock yards on its own property, and maintain them in a proper manner, so as not to make them a nuisance, but that if during the times stated they were maintained in such a manner as to be offensive to the residents of adjacent property, and to cause unhealthful discomforts to the people thereon, and plaintiff suffered thereby,—either himself or his family,—he might recover damages therefor. It seems to us, upon elementary principles applicable in cases of nuisance, that the rights of defendant were sufficiently protected, and that it had all it was entitled to demand under the law.

The verdict awarded was for $352. It must be conceded that the jury dispensed damages with a liberal hand, but the injuries to plaintiff's possession and enjoyment of his home, with the suffering sustained by the members of his family, were continued for over a period of four months, during the hottest part of the year. While plaintiff was not confined to his bed, he and the members of the family were made ill, and were unable to enjoy the ordinary comforts of life. The plaintiff was not required to leave his home and seek refuge elsewhere, but had the right to assume that the nuisance would be removed, and to continue therein in hopes of relief. The diminution of the rental value of the premises during the continuance of the nuisance was not the limitation of plaintiff's right to recover, but he might have damages for actual inconvenience and physical discomforts which materially impaired the healthful enjoyment and occupancy of his home, and for actual injury to his property caused directly thereby without fault on his part. Berger v. Minneapolis Gaslight Co., 60 Minn. 296, 62 N. W. 336.

In view of the whole evidence, and the manner in which the question of damages has been disposed of, we are not able to give a satisfactory reason for interfering with the verdict, or the dis-

cretion of the trial court, whose approval it has received. Other verdicts for similar injuries, less serious, where the damages awarded were even larger, have been sustained by this court. Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170; Anderson v. Burlington, C. R. & N. Ry. Co., 82 Minn. 293, 84 N. W. 145, 1021.

Order affirmed.