DOLAN, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*May 29—June 18, 1903.*

*Railroads: Nuisances: Maintenance of stockyards: Evidence: Special verdict: Judgment.*

1. Under sec. 1798, Stats. 1898, a railway company is bound to receive and transport freight tendered to it for shipment, and provide suitable facilities for receiving and handling the same at any station; under sec. 1801, it is required to maintain a station at every village through which it passes which has a postoffice and a population of 200 or more, and, under sec. 1799a, it must receive for carriage all live stock offered to it from February 1st to September 1st, inclusive, and properly transport the same over its road. Defendant, for a number of years before plaintiff acquired title to his premises, had maintained a stockyard for receiving and shipping live stock, consisting of pens and covered sheds, directly across a sixty-six-foot street from plaintiff's dwelling. In an action for damages for a nuisance alleged to be caused by offensive odors and noises arising from such stockyard, and to procure the abatement thereof, the evidence was sufficient to sustain findings of the jury, in effect, that the defendant permitted to be sent over to plaintiff's dwelling offensive odors and noises, interfering with the physical comfort of plaintiff and his family in the occupancy of said premises. *Held*, that the questions presented were purely questions of law, and, if the defendant used all reasonable diligence in the location of its stockyard to avoid injury to others, and managed it with improved methods, using all reasonable skill to prevent its becoming a nuisance, it performed its whole duty, and, if injury resulted therefrom to plaintiff, it was *damnum absque injuria.*

2. In an action against a railway company for a nuisance in maintaining a stockyard at one of its stations, it is error to exclude evidence showing that there was no other reasonably convenient and practicable location at the station in question for the yard.

3. In an action for damages for the maintenance of a stockyard, alleged to be a nuisance, and for its abatement, a verdict which fails to determine the fact whether the location was a reasonably proper one, and also whether the defendant operated the yard with approved methods, and used reasonable skill and diligence in preventing unhealthy conditions and unpleasant noises therein, cannot sustain a judgment for the plaintiff.

APPEAL from a judgment of the circuit court for Monroe county: J. J. FRUIT, Circuit Judge. *Reversed.*

This is an action to recover damages for an alleged nuisance, and to procure the abatement thereof. The action was tried before the court and a jury. The evidence showed that for more than twenty years the defendant has owned and occupied a railway passing through the village of Cashton, Monroe county, and has maintained and used at said village, upon its grounds, stockyards for the receiving and shipping of live stock over its road; that the stockyards consist of pens and covered sheds; that the plaintiff owns and occupies a dwelling house across a sixty-six foot street from the stockyards, which he acquired a considerable time after the establishment of the yards. The plaintiff's claim is that the stockyards were so used as to constitute a nuisance to himself and his family, by reason of offensive odors and noises therefrom. The following special verdict was rendered by the jury:

"1. Has the defendant railway company frequently, between October 1, 1898, and August 14, 1901, by the maintenance and use of its stockyards, sent over, or permitted to be sent over, upon the premises of the plaintiff, disagreeable and offensive odors, to such an extent as to materially interfere with the physical comfort of the plaintiff and his family in the occupancy of said premises? *Answer.* Yes. 2. Did disagreeable and offensive noises frequently come from the stock, when in such stockyards, to the plaintiff's premises, between October 1, 1898, and August 14, 1901, to such an extent as to materially interfere with the physical comfort of the plaintiff and his family in the occupancy of said premises? *A.* Yes. 3. Were there any acts of copulation among the stock when in such stockyards, between October 1, 1898, and August 14, 1901; and, if so, were such acts of such frequent occurrence, and so open to the view of the plaintiff and his family, as to materially cause physical discomfort to the plaintiff and his family in the occupancy of his said premises? *A.* No. 4. Was the illness of the plaintiff's wife in the fall and winter of 1898 and 1900 caused by any of the odors or noises which may have at any time come from such

stockyards, or from any other cause or causes occurring in or in connection with the use and maintenance of such stockyards? *A. (Answered by the court.)* No. 5. If the court shall finally determine that the plaintiff shall recover in this action, at what sum do you assess his damages? *A.* $144.75."

A motion for a new trial by the defendant was overruled, and judgment rendered for the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Masters & Graves,* attorneys, and *H. H. Field,* of counsel, and oral argument by *Mr. Field.*

*F. V. McManamy,* for the respondent.

WINSLOW, J. This is an action at law, under sec. 3180, Stats. 1898, to recover damages for, and secure the abatement of, a nuisance. The alleged nuisance consists of stockyards, maintained by the defendant upon its depot grounds at the village of Cashton, from which offensive and injurious odors and noises are said to proceed to the great discomfort of the plaintiff and his family. The evidence was entirely sufficient to sustain the findings of the jury, and the questions presented are purely questions of law.

The defendant is a railway company duly chartered and operating a railroad. It is bound by positive requirement of law to receive and transport freight tendered to it for shipment, and provide suitable facilities for receiving and handling the same at any of its stations. Stats. 1898, sec. 1798. It is also required to maintain a station at every village through which it passes which has a post office and a population of 200 people or more. Id. sec. 1801. It must receive for carriage all live stock offered to it from February 1st to September 30th, inclusive, and properly transport the same over its road. Id. sec. 1799a. In order to discharge the statutory duty of receiving and transporting live stock, it must have facilities for the purpose at its stations, or in some convenient place within a reasonable distance. Inasmuch as it

cannot have a train ready at all times to immediately receive and transport the stock offered, it must necessarily have yards or inclosures in which the animals may be kept until they can be taken away in the regular course of the operation of the road. That offensive smells and unpleasant noises will inevitably come from such yards, when in use, is matter of common knowledge. The skill of man has not yet devised means, within the bounds of reasonable expense and dili- gence, by which these disagreeable results can be wholly avoided. It must follow that, if a railway company exercises reasonable and proper diligence and care in the location of its yards and in its management, it has performed its whole duty. Impossibilities cannot be required. Duties can- not be imposed, and punishments inflicted, simply because the duties have been performed. If injury results to others, it must in such case be *damnum absque injuria.* The same rule must apply which applies to noise and smoke and steam resulting from the operation of the railroad. If these an- noyances result simply from the necessary and proper opera- tion of the road, they must be borne. If the company use the best and most improved devices to prevent injury to others, it is protected by its franchises. If it is negligent in this re- gard, it must respond in damages, if a nuisance is thereby created. 2 Wood, Nuisances (3d ed.) § 755. So, in the case of stockyards, the railway company must use all reason- able diligence in the location of its yards, to avoid injury to others, and must manage them with approved methods, using all reasonable skill to prevent their becoming a nuisance. It cannot unnecessarily or unreasonably locate its yards in close proximity to dwellings or business houses, to their injury, without incurring liability. It must, doubtless, in order to perform its duty, place the yards in a reasonably practicable and convenient location in the vicinity of its station, for the reception and shipping of cattle, but it must at the same time place them where they will do the least possible injury to

others. If these requirements be fulfilled, and if the yards be operated without negligence, and with that skill and diligence to avoid noise and noxious smells therefrom which the importance of the duty demands, there can be no liability, even though injury may result to others. Such injury, like many others, is simply one of the penalties we have to pay for the conveniences of modern methods of transportation.

Much reliance was placed by the plaintiff upon *Baltimore & P. R. Co. v. Fifth Baptist Church,* 108 U. S. 317, 2 Sup. Ct. 719, and *Anderson v. C., M. & St. P. R. Co.* 85 Minn. 337, 88 N. W. 1001. In the first of these cases a railroad company had constructed a roundhouse and machine shop next to a church, and the noise seriously disturbed the religious exercises. This was held to be an actionable nuisance, but the fact plainly appeared in the case that the location was unreasonable, and that there were many other places in the city where the shop could have been placed, and answer all railroad purposes fully as well. These being the facts, it was held that the shop so situated was a nuisance, and that, whatever rights were conferred on the railroad company by its charter, they were subject to the qualification that their works should not be so placed as by their use to *unreasonably* interfere with and disturb the comfort of others. The case goes no further, and, when rightly understood, it does not antagonize the propositions already laid down in this opinion. The second case cited is a stockyards case, and contains language tending to justify plaintiff's position here. In that case, however, the evidence established the fact that the yards were kept in an absolutely filthy condition, to the extent that dead animals were allowed to remain in them and become putrid. In view of these facts, the opinion must be read. The court said, in substance, that defendant's claim was that it had a right to select any place on its right of way for the reception and shipment of stock, but that it could not be conceded that a railroad company could rightfully create

noxious conditions on its own property so near the private dwellings of others as *unnecessarily* to interfere with the health of the inmates. Here the element of necessity, which must mean reasonable necessity in the proper conduct of its business, is plainly recognized. This is not the case of a manufacturing company, which may purchase property and locate its works wherever it may choose. The stockyards must be adjacent to the railroad line, the location of which is fixed, and they must be at or in convenient proximity to a station. It will not do to say that the company must go out into unsettled districts in the country for its stockyards, for this is to say that, as soon as people begin to reside in the vicinity, the yards must be again removed to some more secluded spot, and so on *ad infinitum*.

The defendant attempted to introduce evidence showing that there was no other reasonably convenient and practicable location at Cashton for the yards, but the evidence was excluded. This was plainly error. *Illinois C. R. Co. v. Grabill,* 50 Ill. 241; *Dunsmore v. C. I. R. Co.* 72 Iowa, 182, 33 N. W. 456; *Shirely v. C. R., I. F. & N. R. Co.* 74 Iowa, 169, 37 N. W. 133. The verdict fails entirely to determine the fact whether the location was a reasonably proper one, and also fails to find whether the company operated the yard upon approved methods, and used reasonable skill and diligence in preventing unhealthy conditions and unpleasant noises therein. In the absence of findings on these questions, the judgment cannot be sustained.

*By the Court.*—Judgment reversed and action remanded for a new trial.