GULF, C. & S. F. RY. CO. v. MOSELEY.

(Circuit Court of Appeals, Eighth Circuit. April 20, 1908.)

No. 2,541.

LIMITATION OF ACTIONS—TRESPASS—PERMANENT DIKES DEFLECTING CURRENT OF STREAM—ACTION FOR INJURY TO LAND—ACCRUAL.

Defendant railroad company built dikes along the bank of a river to prevent the current from washing away its roadbed. They were constructed by driving rows of large piles from five to seven feet into the earth, seven feet apart, planking between, and filling in with stone. The effect of such dikes was to deflect the current of the river against plaintiff's land on the opposite bank, portions of which were thereafter constantly being undermined and destroyed. *Held*, that the dikes were permanent structures, and that the damages for injury to plaintiff's land, both present and prospective, were recoverable in a single action, the right to bring which accrued at once when the dikes were completed and the injury commenced, and was barred in three years thereafter, under Mansf. Dig. Ark. § 4478 (Ind. T. Ann. St. 1899, § 2945), limiting the time for bringing actions for trespass upon lands.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 303–305.]

In Error to the United States Court of Appeals in the Indian Territory.

For opinion of the court below, see 98 S. W. 129.

S. T. Bledsoe, for plaintiff in error.

A. Eddleman and J. F. Sharp, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The defendant in error (hereinafter designated the "plaintiff") in the United States Court for the Southern District of the Indian Territory recovered judgment against the plaintiff in error (hereinafter designated the "defendant") for damages to her land in the sum of $1,980, with interest at 6 per cent. from July 4, 1895, which judgment was affirmed by the Court of Ap-

peals of the Territory, to reverse which this writ of error is prosecuted.

In 1893 the plaintiff, under the homestead law, owned a tract of land of 137 acres, bordering on the east bank of the Canadian river, in Cleveland county, Oklahoma Territory. The defendant railroad company prior to 1893 had constructed its roadbed along the opposite west bank of said river on its right of way. The Canadian river, of varying width, at the point in question was perhaps one-half mile wide under high stage of water. The stream was somewhat treacherous in its flow, subject annually to high floods, which rendered its current, when veering to the bank, destructive to adjacent lands. The bank along the plaintiff's land, owing to the sandy soil formation, was quite susceptible to disintegration from the wash of the current; and owing to the low surface of the body of the land this condition existed throughout the tract, so that the caving in of large areas of the land was an apparent inevitable result when the current was sent against the east bank of the river. Prior to 1893 the normal flow of the current was toward and along the west shore line, opposite the plaintiff's land, with the result that it was constantly making inroads on the right of way of the defendant company, endangering its roadbed and tracks, until, as the defendant claims and the testimony tends to establish, it became necessary for the preservation of its roadbed to construct at the point in question a line of powerful dikes, with the view of throwing the current back to its wonted place as at the time of the construction of the road. The effect of these dikes, the plaintiff claims, was to so deflect the natural current of the river as to drive it forcibly against the opposite shore line, undermining and disintegrating the natural barrier of the bank protecting her land.

The petition avers that in September, 1893, about one month after the completion of the dikes, the current of the river so diverted washed away of the plaintiff's land about 5 acres, in 1894 about 10 acres, in 1895 about 75 acres, and in 1897 about 5 acres. This action was originally instituted on the 11th day of December, 1897, covering the damages sustained up to that time. On the 23d day of November, 1899, an amended petition was filed, claiming damages for the destruction of 5 acres of the land in 1898 and for damages to the remaining portion of the land. A demurrer to the petition having been overruled, the defendant answered, pleading, inter alia, the statute of limitations. The trial court denied the applicability of this defense. If in fact and law this plea was good, the discussion of other assignments of error is unnecessary. The statute of the state of Arkansas (section 4478, Mans. Dig. [Ind. T. Ann. St. 1899, § 2945]), applicable to the Indian Territory, declares that an action for trespass upon lands shall be brought within three years after cause of action accrues. As construed by the Supreme Court of Arkansas, the three-year period applies to an action for damages of this character. St. Louis, I. M. & S. Ry. Co. v. Morris, 35 Ark. 612.

The defendant's contention is that the dikes were permanent in construction, and under the allegations of the petition and the proofs the injuries to the plaintiff's freehold were obviously consequential,

and therefore the entire damages could have been recovered in one action, the cause for which arose as early as September, 1893, more than four years prior to the institution of suit, which was more than three years after the damage was done in 1894. The contention of the plaintiff is that the structure did not immediately involve the entire destruction of her estate, or its beneficial use, but the damages were apportionable from time to time, and therefore separate actions might be brought to recover damages for each successive injury as it occurred. That the structure of the dikes was permanent in character, and intended by the defendant to be so, hardly admits of debate. The evidence shows that the piles, at the large end, were from 14 inches to 2 feet in diameter, and were driven down into the earth from 5 to 7 feet, and were about 7 feet apart, with caps of heavy boards along the tops. These rows of dikes were boarded up with planks from 2 to 3 inches in thickness, and were filled in with smaller stones at the bottom, and on the top with stones so large that only three of them could be loaded onto a car, which was run out along the side of the dike, and the stones were lifted in place by derricks.

It may be true, in the abstract, that nothing constructed by the hand of man is indestructible. The razure of time and the process of erosion of the waters may wear away this structure. But in its relation to the practical affairs of human action, with which the law deals, this formidable, substantial work must be regarded as possessing in a high degree the quality of a permanent structure. The petition itself avers:

"That the natural and probable consequence of the erection of said dikes was to change the current and channel of said river, by turning the current over and against the east or left bank of said river and cutting and washing said bank away, and that they were built and maintained by the defendant for this purpose. * * * That the effect of said dikes was to, and they did, change the current of said river, and threw the same over and against the left or east bank of the same, and cut and washed the same away, and destroyed plaintiff's land, and changed the channel of said river, making the same much farther east than it ever was before the wrongful building of said dikes. That after and on account of the said building and maintaining of said dikes, at each successive rise in said river, the current was thrown over and upon plaintiff's land, and washed a portion of the same away, and destroyed it."

As if to aid this defense, the plaintiff's evidence was full and strong to the point that within the month succeeding the construction of the dikes the effect was to send the current of the river directly across to the east shore, where it began rapidly to eat away the bank, destroying 5 acres of the land, and in the following year 10 acres, and 1895 75 acres more. In the very nature of the situation, this deflection of the current to the east shore was constant—more destructive at intermittent periods of high water than at others. This characteristic of the river, its history shows, was as certain of manifestation as the coming of the seasons. The quality of the soil composing the ever-receding bank and the lay of the land rendered it so probable that this process of disintegration and work of destruction would proceed, unless arrested by human agency, as to have permitted a tangible estimation of the whole damage, within the admissibility of

the law, in a single action as early as September, 1893. Indeed, the plaintiff ought not to be heard to say that this ascertainment was too remote and speculative, for the reason that in this suit the trial court, under the evidence introduced by the plaintiff, permitted her to recover, not only damages for all the land hitherto destroyed by the alleged nuisance within the three years next preceding the institution of suit, but for the prospective damages to the remainder of her land yet left intact. Some of her witnesses testified that the residue of the land was rendered almost worthless, and that they would not pay the taxes thereon for its value.

It is to be conceded that there is much conflict in the decisions of courts touching the application of the statute of limitations to nuisances of this character. This conflict has arisen especially in reference to the erection of railroad embankments across creeks and swales, draining large areas of adjacent land without sufficient ditches or culverts to carry off the waters on occasions of freshets, whereby the land becomes flooded by overflows, damaging annual crops, and the like. In such case there is not infrequently present elements of uncertainty, such as the insufficiency of the openings in the embankments, which, the presumption may be indulged, the railroad might at any time in the future sufficiently enlarge, rather than submit in the first action to the recovery of all the consequential damages. In the second place, where the damage is to crops, it may depend entirely upon the possibility of the nonrecurrence of the overrunning flood in any given year, or the contingency of no crop being planted thereon, or being cultivated in a product subject to little damage from a temporary overflow. Such are not the conditions of the nuisance in question. The very purpose to be subserved by the defendant's permanent structure does not admit of any rearrangement to obviate sending the force of the current of the river against the plaintiff's shore line. Neither did the situation admit of the probability of the removal of the dikes in the future, as the burden of the defendant's proof was that they are indispensably necessary to prevent the destruction of its right of way, roadbed, and tracks. Moreover, the injury to the plaintiff did not consist in now and then flooding her land with water, damaging possible crops: but it was the destruction of the freehold by the constant eating away of the protecting bank—a process as certain to continue as the annual rainfalls and the flow of water in a large river, and a result reduced to a demonstration more than three years before this suit was instituted.

Gould, in his work on Waters (section 1416), speaking of permanent injury, says:

"In such cases the rule is altered for the sake of convenience, and but one action is allowed. The plaintiff is required to recover in one suit the entire damages, present and prospective, caused by the defendant's act. Injuries caused by permanent structures infringing upon the plaintiff's rights in his land, such as railroad embankments, culverts, and bridges, permanent dams, and permanent pollutions of water, fall in this class."

Farnham, in his work on Waters and Water Courses (volume 2, § 586), discussing this question, says:

"The rule that every continuance of a nuisance is a fresh nuisance should have no application in case of permanent nuisances of this class, any more than it should be contended that a trespass upon the land and erection of a structure there should constitute a fresh trespass every moment it was continued, for the purpose of extending the time within which the action could be brought. And there are cases which have applied the true rule that, in case the dam is a permanent one, the limitation period will begin to run against the right of action to recover damages for the injuries from the time the dam was built. The rule that the statute of limitations is not available to defeat an action for damages for the flooding of land until the right to flood it has been acquired by prescription, since every continuance of the injury is a fresh nuisance, is a mere arbitrary rule, invented by the courts to meet the necessities of an apparently hard case. The difficulty seems to be that the courts have confounded two distinct rights of action. As was seen in a preceding section, it is held that ejectment will not lie to destroy an inchoate flowage easement. To avoid the effect of that ruling, the courts which apply the successive injury doctrine, in order to pervent the acquisition of an easement in real estate in less than the prescriptive period, hold that the nuisance is a continuing one, and that action may be brought at any time until the right to maintain it has been acquired by prescription. The latter holding seems illogical. If a permanent obstruction is erected, so that it casts water across the boundary line onto land of the upper owner, the injury is complete at the time the obstruction is erected and the injury done, and there is no ground for holding that a right of action for damages may be carried along for a period of 20 years, when the statute of limitations says that it shall be barred in 6 years."

This position is reinforced by Judge Brewer, in Central Branch of Union Pacific Railroad Co. v. Twine, 23 Kan. 586, 33 Am. Rep. 203.

As applied to the instance where the permanent structure is such as to injure the land itself of the adjacent proprietor, the Supreme Judicial Court of Massachusetts maintains that the whole injury, present and prospective, is recoverable in one action, maintainable immediately when the effect of the nuisance was first manifested. In Fowle v. N. H. & N. Co., 107 Mass. 352, the plaintiff sued to recover damages for injury to the freehold resulting from the construction of the defendant's railroad along the bank of Mill river and across the bed thereof. The construction was of earth and stone, so as to obstruct and deflect the flow and current of the river, driving it against the embankment of the plaintiff's land, whereby it was undermined, and large portions thereof were destroyed, whereby the value of the residue of the land was diminished. The defendant pleaded a former recovery for the first damage resulting from the destruction of the land, which occurred beyond the statutory period of limitations. Gray, J., said:

"The embankment of the defendants was a permanent structure, which, without any further act except keeping it in repair, must continue to turn the current of the river in such a manner as gradually to wash away the plaintiff's land. For this injury the plaintiff might recover in one action entire damages, not limited to those which had been actually suffered at the date of the writ. And the judgment in one such action is a bar to another like action between the parties for subsequent injuries from the same cause. Troy v. Cheshire Railroad Co., 23 N. H. 83, 55 Am. Dec. 177; Warner v. Bacon, 8 Gray (Mass.) 397, 402, 405, 69 Am. Dec. 253. This case is not like one of illegally flowing land by means of a milldam, where the damage is not caused by the mere existence of the dam itself, but by the height at which the water is retained by it, according to the manner of its use from time to

time, as in Staple v. Spring, 10 Mass. 72, and Hodges v. Hodges, 5 Metc. (Mass.) 205. Nor is it the case of an action against a grantee who, after notice to remove it, maintains a nuisance erected by his grantor, as in McDonough v. Gilman, 3° Allen (Mass.) 264, 80 Am. Dec. 72, and Nichols v. City of Boston, 98 Mass. 39, 93 Am. Dec. 132."

When the case went back for retrial, the plaintiff again sought to recover by some additional evidence. After adverting to the fact that in the first action for damages there was probably included in the recovery prospective damages, Judge Colt said:

"The case at bar is not to be treated strictly in this respect as an action for abatable nuisance. More accurately, it is an action against the defendant for the construction of public work under its charter in such a manner as to cause unnecessary damage for the want of reasonable care and skill in its construction for such a remedy. The remedy is at common law; and if it results from a cause which is either permanent in its character, or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and possible future injuries."

This doctrine is supported by the following cases: Chicago & Alton Rd. Co. v. Maher, 91 Ill. 312; Van Schoick v. D. & R. Canal Co., 20 N. J. Law, 249; Van Orsdol v. B., C. R. & N. R. Co., 56 Iowa, 470, 9 N. W. 379; Henderson v. N. Y. Cen. Rd. Co., 78 N. Y. 423; Rock Land Water Co. v. Tillson, 69 Me. 255; Powers v. Council Bluffs, 45 Iowa, 654, 24 Am. Rep. 792; Railway Co. v. Loeb, 118 Ill. 214, 8 N. E. 460, 59 Am. Rep. 341.

The Supreme Court of Arkansas has applied the rule, under the statute of limitations, to the instance of permanent railroad embankments, whereby the natural waterflow is diverted so as to deluge, in times of freshets, adjacent lands. The pertinent decisions of that court are reviewed in St. Louis, I. M. & S. Ry. Co. v. Anderson et al., 62 Ark. 360, 35 S. W. 791. The plaintiff had constructed a drainage ditch on his lands. The defendant railroad company built a permanent embankment across it, and obstructed the outflow of water, whereby in times of freshets the plaintiff's lands were flooded and the value diminished. The court affirmed the proposition that:

"Whenever the nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance."

Further on the court said:

"In this case the obstruction of the ditch was permanent; that is, it will continue without change from any cause, except human labor. The effect of it was to restore the land drained to the condition in which it was before the ditch was dug. Its present and future effect upon the land could be ascertained with reasonable certainty. The damage was original, and susceptible of immediate estimation. No lapse of time was necessary to develop it. * * * As the law does not favor the multiplicity of suits, and all damages which will be sustained as a necessary result of the filling of the ditch in question and are recoverable could have been estimated at the time of such obstruction from the effect of it upon the value of the land, only one action should be brought therefor, and that within three years after the ditch was closed up."

The trial court, as in effect requested by the defendant, should have instructed the jury that the action is barred by the statute of limita-

tions. It results that the judgment of the Court of Appeals and of the United States Court for the Southern District of the Indian Territory must be reversed, and the cause remanded, with direction to grant a new trial, and for further proceeding in conformity with this opinion.