CHOCTAW, O. & G. R. CO. v. DREW.

No. 2351. Opinion Filed February 11, 1913.

Rehearing Denied May 13, 1913.

(130 Pac. 1149.)

1. NUISANCE—"Private Nuisance." Under the law in force in the Indian Territory prior to statehood, a private nuisance may be defined as anything wrongfully done to the hurt or annoyance of the lands, tenements, or hereditaments of another.

2. SAME—Acts Done Under Legislative Authority. Legislative grants of privileges or powers to corporate bodies, like those to a railroad company, to locate, construct, maintain, and operate its line of railroad and necessary appurtenances under the Act of Congress of February 28, 1902, c. 134, 32 St. at L. 43 (U. S. Comp. St. Supp. 1911, p. 708), confer no license to construct and

use them in disregard of the private rights of others, and with immunity for their invasion.

3. **TORTS—Immunity From Liability—Legislative Authority.** The granting of such powers and privileges does not exempt the beneficiary thereunder from liability for injury to adjacent property, caused directly by the unlawful exercise of such authority.

4. **RAILROADS—Construction and Maintenance—Private Nuisance— Right of Action.** A railroad company located and erected a roundhouse, switches, turntable, and cinder pit near the residence property of plaintiff, and so used them as to greatly impair the value thereof, by filling the atmosphere with offensive gases, dust, steam, and dense smoke, by throwing cinders over and upon said premises, and by loud noises and offensive odors. Held, a nuisance, causing special injury to the plaintiff, for which he had a right of action for damages; it appearing that the railroad company might have constructed said appurtenances at another suitable location, where such injuries would not have been inflicted, either to plaintiff or others.

5. **SAME—Consequential Damages.** Damages resulting from injurious acts of the above nature are not unavoidable and consequential, for which no action will lie, but result from the construction and use of the railroad company's property in close proximity to the premises of the plaintiff, and which do not affect in a like injurious manner the public generally, or other similar property situated elsewhere.

6. **SAME—Private Nuisance.** A railroad company has no more right than an individual to so use its property as to unreasonably interfere with the peaceable and comfortable enjoyment by others of their property, or to cause special injury to particular property, without making compensation for the injury.

7. **PUBLIC LANDS—Town Sites—Lot Owners—Torts Affecting.** The owner of permanent improvements on town lots in government town sites in the Indian Territory, and to whom said lots were scheduled and set apart by the Town-site Commission acting pursuant to law, and who subsequently received patents therefor, has sufficient title, prior to the issuance of a patent, to support an action to recover damages to the said lots inflicted by a railroad company which is in no way connected with any claim or interest in the land.

8. **NUISANCE—Injury to Realty—Damages Recoverable.** Under the rule of decision in the Indian Territory prior to statehood, where the structures and appurtenances contributing to the injury were of a permanent nature, and their injurious use continued for a long number of years, without effort to abate, all damages for injury to adjacent lands, both present and prospective, were recoverable in a single action.

9. **SAME—Measure of Damages.** The true measure of damages is compensation for the loss or injury sustained, and, as a gen-

eral rule, the damages are measured by the depreciation in the market value of the property injured, where the injury caused by the nuisance is of a permanent nature.

(Syllabus by Sharp, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Byron Drew against the Choctaw, Oklahoma & Gulf Railroad Company for damages on account of a private nuisance. From a judgment for plaintiff for $1,995, defendant brings error. Affirmed.

*C. O. Blake, H. B. Lowe, R. J. Roberts,* and *W. H. Moore,* for plaintiff in error.
*Cruce, Cruce & Bleakmore,* for defendant in error.

Opinion by SHARP, C. Among the errors urged by plaintiff in error are the following: First, that a railroad company is not liable to an abutting owner in damages on account of noise, smoke, or other like inconveniences, resulting from the operation of its trains in a lawful, careful, and proper manner; second, that a nuisance cannot arise so as to give a common-law right of action from that which the law authorizes; third, that, its right of way having been obtained pursuant to law, and compensation made for the lands taken, claims of abutting owners for consequential damages cannot be maintained. The railroad company's right of way was acquired under the Act of Congress of February 28, 1902, commonly known as the Enid and Anadarko Act (Act Feb. 28, 1902, c. 134, 32 St. at L. 43 [U. S. Comp. St. Supp. 1911, p. 708]). By virtue thereof the company acquired the right to locate, construct, own, equip, operate, use, and maintain its line of railroad through the Indian Territory, together with the right to take and condemn lands for right of way, depot grounds, terminals, and other railroad purposes, by whomsoever owned. It was further provided in said act that additional lands, not exceeding 40 acres at any one place, could be taken when necessary for yards, roundhouses, turntables, machine shops, water stations, and other railroad

purposes. Provision was made for the institution of condemnation proceedings in the United States court in the Indian Territory, and for the assessment and payment of damages for all land taken, and all damages done or to be done by the construction of the railroad, or the taking of any lands for railroad purposes.

It is of the use of the appurtenances and structures, and machinery therein, or operated thereon, that plaintiff complains. It is shown: That the plaintiff was the owner of certain lots in the town of Ardmore, Ind. Ter., and was in possession thereof at the time the defendant built its line of railroad into and through said town, and had erected thereon lasting and valuable improvements, including houses, barns, and fences, and had set out trees, shrubbery, and flowers, and was occupying one of the residences on said lots as a home for himself and family. The other residences were occupied either by servants or by tenants, from whom plaintiff derived rents and revenues. The plaintiff had expended upon said premises about $5,000 in improving them for residence purposes and for a home, and that the same was desirable residence property, and that the total value of the premises was between $8,000 and $10,000. That the railroad company, within a short distance of plaintiff's property, erected and maintains a roundhouse, machine shops, and a cinder pit, and had also built and maintains switches, upon which engines were continuously being operated, and that in the operation of the roundhouse and machine shops large volumes of smoke, dust, and cinders were constantly and continually emitted therefrom and thrown upon and around the premises of the plaintiff to such an extent as to destroy the trees, shrubbery, and flowers, and to constitute a nuisance, and to render plaintiff's property almost worthless for residence purposes, the only purpose for which it was fitted or of value.

It was shown by the witness Hill that the railroad company was in the habit of killing its engines at the cinder pit just south of his house, which caused, to use the language of the witness, "an awful steam and smell," and that a solid,

dense smoke always followed, causing great discomfort, and that it was necessary to let down the windows in order to remain in the house. The witness Wallace testified that it was particularly noisy down there at night and in the early morning, and that when the engines were let die it would rattle the windows to such an extent as to prevent hearing, and that the gas and smoke were very offensive at times, especially when they were killing the engines or putting out the fires; that the smoke was very injurious; and that they could not successfully put out washing. The plaintiff testified that the railroad company was operating from four to eight engines in and out, both day and night; that two railroads used the roundhouse, and located the site of the switches, cinder pit, and roundhouse near his property on the south; that in operating its road there was much noise, and that the smoke was very dense, to such an extent that it was necessary to close down the windows and go in the house to escape the discomforts of the smoke and cinders; and that at times the noise coming from the railroad premises was so loud that conversation could not be carried on.

Obviously the agencies effecting this result constituted a nuisance. They interfered seriously, not only with the enjoyment by plaintiff of his property, acquired before their construction, but greatly reduced both its usable and salable value. A nuisance is defined by Blackstone as: "Anything that worketh hurt, inconvenience or damage to another." Sutherland on Damages (section 1035) defines a private nuisance as anything wrongfully done to the hurt or annoyance of the lands, tenements, or hereditaments of another, and adds that it may be anything which is calculated to interfere with the comfortable enjoyment of a man's house, as smoke, noise, or bad odors, even when not injurious to health. It may be any wrongful act which destroys or deteriorates the property of another, or interferes with the lawful use and enjoyment thereof, or any act which unlawfully hinders the enjoyment of a common or public right and thereby causes a special injury.

In *Baltimore & Potomac Ry. Co. v. Fifth Baptist Church,*
108 U. S. 329, 2 Sup. Ct. 726, 27 L. Ed. 739, it is said:

"That is a nuisance which annoys and disturbs one in the
possession of his property, rendering its ordinary use or occu-
pation physically uncomfortable to him."

And in which it is held that for such annoyances and dis-
comfort courts of law will afford redress by giving damages
against the wrongdoer.

It was charged by plaintiff that the injury sustained was
one peculiar to him, and not suffered by the public at large,
and this allegation is sufficiently shown by the testimony, and
that the plaintiff in this particular has brought himself within
the rules entitling him to redress. If it were true that the
damage sustained was such as merely incidentally inconven-
ienced plaintiff, and which unavoidably followed the exercise of
charter powers, plaintiff would be without a remedy, as in such
cases private inconvenience must be suffered for the public ac-
commodation. An actionable nuisance may be said to be any-
thing wrongfully done or permitted, which injures or annoys
another in the enjoyment of his legal rights. Cooley on Torts
(2d Ed.) p. 670. Sutherland on Damages, sec. 1035. Such
nuisances are of many kinds, and may consist of flooding lands
by water, fouling the water of streams, offensive noises, jar of
machinery, offensive odors, dust, smoke, escaping steam, soot,
and acts causing personal discomfort or mental disquietude.
An attempt to enumerate all nuisances would be almost the
equivalent of an attempt to classify the infinite variety of ways
in which one may be annoyed or impeded in the enjoyment of
his rights.

The fact that the law authorized plaintiff in error to ac-
quire a right of way and, where necessary for the purposes
named, additional grounds, did not authorize the construction
of machine shops, roundhouses, cinder pits, and, appurte-
nances of a like nature, wherever deemed proper, without re-
gard to the property rights of others. Whatever the extent of
the authority conferred by the act, it was accompanied by the

Vol. 37—26.

implied qualification that the works should not be so placed as by their use to unreasonably interfere with, disturb, or destroy the peaceable and comfortable enjoyment of others in their property. Grants of privileges or powers to railroads, like those involved, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. *Anderson v. Chicago, M. & St. P. R. Co.,* 85 Minn. 337, 88 N. W. 1001; *Louisville & N. T. Co. v. Lellyett,* 114 Tenn. 368, 85 S. W. 881, 1. L. R. A. (N. S.) 49; *Louisville & N. T. Co. v. Jacobs,* 109 Tenn. 727, 72 S. W. 957, 61 L. R. A. 188; *Beseman v. Pennsylvania R. Co.,* 50 N. J. Law, 235, 13 Atl. 167; *Booth v. Rome, W. & O. Terminal R. Co.,* 140 N. Y. 273, 35 N. E. 593, 24 L. R. A. 105, 37 Am. St. Rep. 552; *Alabama & Vicksburg Ry. Co. v. King,* 93 Mass. 379, 47 South. 857, 22 L. R. A. (N. S.) 603; *King v. Vicksburg R. & Light Co.,* 88 Miss. 456, 42 South. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749; *Terrell v. Chesapeake & O. Ry. Co.,* 110 Va. 340, 66 S. E. 55, 32 L. R. A. (N. S.) 371; *Cogswell v. New York, etc., Ry. Co.,* 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; *Northern Pac. Ry. Co. v. United States,* 104 Fed. 691, 44 C. C. A. 135, 59 L. R. A. 80; *Baltimore & Potomac Ry. Co. v. Fifth Baptist Church, supra.* The liability of the defendant company for the injury resulting was the same as that of individuals committing a similar wrong. The legislative authorization exempted only from liability to suits, civil or criminal, at the instance of the sovereignty, and did not affect any claim of a private citizen for damages for any special inconvenience, discomfort, or injury suffered, and not experienced by the public at large. It is therefore no sufficient defense for the railroad company to say that, its right of way having been lawfully acquired in the first instance, it is not liable for damages incurred of the kind shown by the testimony. Neither does the fact that the engines, trains, shops, and turntables may have been operated in a careful and skillful manner prevent a liability, as was held in *Baltimore & Potomac Ry. Co. v. Fifth Baptist Church, supra.*

In *Chicago G. W. Ry. Co. v. First Methodist Episcopal Church,* 102 Fed. 85, 42 C. C. A. 178, 50 L. R. A. 488, the Circuit Court of Appeals for the Eighth Circuit, in an able opinion, followed the rule announced by the Supreme Court in the First Baptist Church case. Answering the charge made by plaintiff in error that if any damages were sustained they were consequential in their nature and not actionable, and came within that class of injuries that are termed in law *damnum absque injuria,* Mr. Justice Caldwell said:

"Conceding that the noise, vibrations, and inconveniences and annoyances which are unavoidable in the lawful running of trains over a railroad track, and which are common to the whole public and to all the abutting owners of property on the street, are not actionable injuries, the plaintiff's right of action is not affected thereby. The smoke, cinders, and offensive smells, and loud and protracted noises, which constitute the nuisance to the plaintiff are not the usual and unavoidable result of the mere operation of the defendant's trains over its track laid in the street, but they result from other uses by the defendant of the street and its track in the immediate vicinity of the plaintiff's property, which do not affect in a like injurious manner the public generally, or other abutting owners of property on the street. The smoke, cinders, offensive smells, and loud and protracted noises which are a nuisance to the plaintiff are not the consequential and unavoidable damages due from a lawful running of the defendant's trains over its track in the street, but result from the erection and use by the defendant of its water hydrant and station, the one in and the other on the street, in close proximity to the plaintiff's church, and which do not affect in a like injurious manner the public generally, or other property situated elsewhere on Choctaw street. In legal effect, the nuisance resulting from the use made of these structures by the defendant constitutes a partial taking of the plaintiff's property, for which compensation must be made."

Numerous authorities are cited by the court in support of the rule announced, to which we may add *Town of Norman v. Ince,* 8 Okla. 412, 58 Pac. 632; *Bates v. Holbrook,* 171 N. Y. 462, 64 N. E. 184; *Willis v. Kentucky & I. Bridge Co.,* 104 Ky. 190, 46 S. W. 489; *Louisville Ry. Co. v. Foster,* 108 Ky.

749, 57 S. W. 481, 50 L. R. A. 813; *Louisville & N. Terminal Co. v. Jacobs,* 109 Tenn. 741, 72 S. W. 954, 61 L. R. A. 188; *Shirly v. Cedar Rapids, etc., Ry. Co.,* 74 Iowa, 169, 37 N. W. 133, 7 Am. St. Rep. 471; *Anderson v. Chicago, etc., Ry. Co.,* 85 Minn. 337, 88 N. W. 1001; *Exley v. Southern Cotton Co.* (C. C.) 151 Fed. 101; *Stockdale v. Rio Grande, etc., Ry. Co.,* 28 Utah, 201, 77 Pac. 849; *Wylie et al. v. Elwood,* 134 Ill. 281, 25 N. E. 570, 9 L. R. A. 726, 23 Am. St. Rep. 673; *Chicago, M. & St. P. R. Co. v. Darke,* 148 Ill. 226, 35 N. E. 750; *Gainesville, etc., Ry. Co. v. Hall,* 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; *Baltimore Belt R. Co. v. Sattler,* 100 Md. 306, 59 Atl. 654, 3 Ann. Cas. 660.

It was further observed by Caldwell, J., in the course of the opinion in the principal case:

"If two private citizens own adjacent lots, one of them cannot establish and maintain on his own lot a nuisance which has the effect of depriving his neighbor of any beneficial use of his lot, without making compensation for the injury; and no more can a private corporation erect and maintain a nuisance on its own premises, or in a public street, which has the effect to deprive an adjacent or abutting owner of the beneficial use of his property, without making compensation for the injury. There is no such thing as a natural person or a private corporation having a 'lawful right' to invade the premises of an abutting owner and appropriate his property; and there is no difference in principle between an actual, physical invasion of one's property and the creation and maintenance of a nuisance which has the effect to deprive him of his beneficial use. The abutting owners of property on a public street have as good right to the free enjoyment of the easements of light and air as they have of their property itself. Without the free enjoyment of these easements, they could have no beneficial use of their property. And it is well settled that filling the air with smoke, cinders, and offensive odors materially injuries the easements of light and air, to the free enjoyment of which the abutting owners of property upon a street have a legal right, and constitutes, in legal effect, a taking of property. * * * The defendant can no more escape making compensation for such damages than it could appropriate the plaintiff's church to its own use, without making compensation therefor."

The underlying principle, involving the question of liability, is discussed in *Markwardt v. City of Guthrie,* 18 Okla. 32, 90 Pac. 26, 9 L. R. A. (N. S.) 1150, 11 Ann. Cas. 581, in which it was held that a municipal corporation was liable for damages for the maintenance of a nuisance, where it discharged sewerage into a river or creek, polluting the water of the stream, causing it to become foul and impregnated with noxious and poisonous substances, rendering it unfit for domestic or other uses, and there creating and maintaining a nuisance which was detrimental to the health, comfort, and repose of a lower riparian owner, and which diminished the value of his lands, and where it was observed that the great weight of the American and English authorities was in accord with the court's conclusion. To the same effect is the case of *Colbert v. City of Ardmore,* 31 Okla. 537, 122 Pac. 508. There the character of nuisance was similar to that in the Markwardt case, and it was held that the city was liable for maintaining a nuisance, whereby it was made impossible for plaintiff and his tenants to cultivate his adjacent lands, and on account thereof the same were made less valuable, and where the noxious and poisonous substances discharged into the sewer so polluted the waters of the stream as to make them offensive to the smell and a menace to the health of persons living or working in that vicinity. See, also, *City of Chickasha v. Looney,* 36 Okla. —, 128 Pac. 136; *City of Ardmore v. Orr,* 35 Okla. 305, 129 Pac. 867.

The acts complained of arose in the Indian Territory, and the action for redress was instituted in a court of that territory. The decisions of the Supreme Court of the United States and the Circuit Court of Appeals for the Eighth Circuit, on questions of the kind presented, were controlling upon the court in which said action was instituted, as well as upon this court. *Summers v. Alexander,* 30 Okla. 198, 120 Pac. 601, 38 L. R. A. (N. S.) 787; *Moore v. Atchison, T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; *Chicago, R. I. & P. Ry. Co. v. Newburn,* 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432.

It was charged in plaintiff's amended petition, and there was testimony in support thereof, that the railroad company had other suitable land upon which it could have erected and maintained its roundhouse, machine shops, switches, cinder pits, etc., at a point from one-quarter to one-half mile distant, where no one resided, and where no damages could have been done to contiguous or nearby property. That it is necessary that railroads have, in the successful operation of their business such property and that they have the right to maintain and operate the same, is not to be questioned; but it does not follow that a corresponding right is given to construct and maintain such structures and appurtenances in close proximity to valuable residence property, where another suitable and convenient location may be had, without an attendant liability for damages for the injuries sustained. In *Chicago; G. W. Ry. Co. v. First Methodist Episcopal Church, supra,* in this connection the court observed:

"The defendant did not claim or show that different and more suitable locations for these structures could not be found. It was shown that its freight station was two blocks west of the church, notwithstanding which it located its water hydrant, where all its trains stopped to take water, in the middle of the street, and within 35 feet of the church."

See, also, *Dolan v. Chicago, M. & St. P. Ry. Co.,* 118 Wis. 366, 95 N. W. 386; *Bates v. Holbrook, supra; Shirely v. Cedar Rapids, etc., Ry. Co., supra.*

Counsel for plaintiff in error, among other cases cited, relies largely on the rule announced in *Northern Transportation Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 337, and *Atchison, T. & S. F. Ry. Co. v. Armstrong,* 71 Kan. 366, 80 Pac. 978, 1 L. R. A. (N. S.) 113, 114 Am. St. Rep. 474. The former was an action to recover damages alleged to have been sustained by plaintiffs in consequence of the action of the city authorities in constructing a tunnel along the line of the public street, and under the Chicago river, where it crossed the street. The plaintiffs were the lessees of a lot bounded on the east by the street and on the south by the river, and the principal injury

of which they complained was that by the operations of the city they were deprived of access to their premises, both on the side of the river and that of the street, during the prosecution of the work. The city authorities were acting under authority of an act of the Legislature, as well as by an ordinance of the city council. The state, and city council as its agent, had full power over the highways of the city, to improve them for the uses for which they were made highways, and the construction of a tunnel was an exercise of that power. It was held that in making the improvements of which the plaintiff complained the city was the agent of the state, and performed a public duty imposed upon it by the Legislature, and that persons appointed or authorized by law to make or improve a highway were not answerable for consequential damages if they act within their jurisdiction, and with care and skill. The case is therefore clearly not in point.

In the latter case it was held that the damages sustained were purely incidental and arose from a proper operation of the defendant's locomotive engines, and that all such inconvenience and incidental damage must be endured by the individual for the general good. It does not appear that the injury sustained was one peculiar to plaintiff, and not suffered by the public at large, though the case does not seem to be rested upon this ground.

That the plaintiff had title sufficient to sustain the judgment, we think, is clear. The Act of June 28, 1898 (30 St. at L. 495, c. 517), fully recognized the rights of owners of permanent improvements on town lots in the towns and cities in the Chickasaw Nation, under which plaintiff's land was platted and laid off into lots. This was done anterior to the location of the railroad. There were on these lots permanent improvements, consisting of four residence houses, a barn, smokehouse, servant's house, fruit orchard containing one and one-quarter acres, and other improvements, costing about $5,000. All were in plaintiff's possession, and were subsequently scheduled to him by the Townsite Commission in pursuance to the provisions of

said act, and to all of which lots he was afterwards given patent. That the damage may have been sustained after the title was initiated, but before it was perfected by the issuance and delivery of patent, is not material. During such period plaintiff was the owner of the equitable title, and was entitled to a patent passing the legal title upon the full performance of the statutory conditions or provisions. In *Foster Lumber Co. v. Arkansas Valley & Western Ry. Co.,* 20 Okla. 583, 95 Pac. 224, 30 L. R. A. (N. S.) 231, in an opinion in which numerous authorities are reviewed and collected, it was held that the owner of the equitable title to real property in possession could maintain an action for permanent injuries thereto. *Shelby et al. v. Zeigler,* 22 Okla. 799, 98 Pac. 989.

*Gulf, Colorado & Santa Fe Ry. Co. v. Clark,* 101 Fed. 678, 41 C. C. A. 597, was a case arising in the Indian Territory. The plaintiff had filed upon a homestead in the Oklahoma Territory immediately across the South Canadian river from where the dikes in question were constructed. His only title to the lands destroyed was his possession and his receiver's receipt as a homesteader. Plaintiff's right of recovery was disputed, on the ground that plaintiff had no title to the land. Answering this contention, it was said by the court in the opinion:

"But the receiver's receipt of one in possession claiming land under it, in accordance with the provisions of section 2290 of the Revised Statutes of the United States, constitutes ample title, as against a wrongdoer who does not connect himself with any claim or interest in the land, to warrant a recovery from him of all the damages which he causes to the property. *Wisconsin Cent. Ry. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; *Carroll v. Safford,* 3 How. 441 [11 L. Ed. 671]; *Witherspoon v. Duncan,* 4 Wall. 210, 18 L. Ed. 339; *Railroad Co. v. Lewis,* 7 U. S. App. 254, 2 C. C. A. 446, 51 Fed. 658; *Railway Co. v. Johnson,* 10 U. S. App. 629, 637, 4 C. C. A. 447, 452, 54 Fed. 474, 479; *Wilson v. Owens* [1 Ind. T. 163], 38 S. W. 976; Mansf. Dig. (Ark.) sec. 2628; *Brummett v. Pearle,* 36 Ark. 471; *Hill v. Plunkett,* 41 Ark. 465."

The case is one squarely in point and favorable to the contention of plaintiff.

Plaintiff in error complains of the giving of instruction No. 4, fixing the measure of damages at the difference between the market value of the premises immediately before the railroad began to operate its road, machine shops, cinder pit, and other appurtenances in the vicinity of the plaintiff's property and the market value of said property immediately thereafter, and says that if any damages were sustained it was that of the personal discomfort of the plaintiff, and that the true rule in such cases is that, where the damage is temporary and the nuisance abatable, the damages are measured by the depreciation to the usable or rental value, in addition to which plaintiff may recover such incidental damages as he may prove.

It was charged in the amended petition that the construction and maintenance of the nuisance complained of destroyed the trees, shrubbery, and flowers growing on his lots, and rendered plaintiff's property almost worthless for residence purposes —the only purpose for which it was fitted or of value. The evidence tended to establish this allegation; in fact, there was testimony introduced, without objection, that went to show that plaintiff had sustained actual damages in the market value of the premises (without regard to the personal discomfort suffered) exceeding the amount of the verdict. The action was brought May 9, 1904, and the structures and appurtenances complained of were constructed a considerable time prior thereto; the exact date not being material. The trial occurred · February 24, 1910. The agencies contributing to the creation and continuance of the nuisance, therefore, sufficiently appear to have · been of a permanent nature, if, indeed, such appurtenances, considering their common construction and the use to which they are adapted, may ever be considered of any other nature. The permanency of the structures, taken in connection with the use to which they were daily put, is of controlling force in determining the proper measure of damages, and was so held in *Gulf, C. & S. F. Ry. Co. v. Moseley*, 88 C. C. A. 236, 161 Fed. 72, 20 L. R. A. (N. S.) 885, where the dikes complained of were permanent in character. It was observed by the court

that there was great conflict in the decisions of the courts touching the application of the statute of limitations to nuisances of the character under consideration, and many authorities are reviewed and cited in support of the court's conclusions. It was held that, as the dikes constituted permanent structures, damages for injury to plaintiff's land, both present and prospective, were recoverable in a single action. Speaking with reference to the character of the dikes, the court said:

"In such case there is not infrequently present elements of uncertainty, such as the insufficiency of the openings in the embankments, which, the presumption may be indulged, the railroad might at any time in the future sufficiently enlarge, rather than submit in the first action to the recovery of all the consequential damages. In the second place, where the damage is to crops, it may depend entirely upon the possibility of the non-recurrence of the overrunning flood in any given year, or the contingency of no crop being planted thereon, or being cultivated in a product subject to little damage from a temporary overflow. Such are not the conditions of the nuisance in question. The very purpose to be subserved by the defendant's permanent structure does not admit of any rearrangement to obviate sending the force of the current of the river against the plaintiff's shore line. Neither did the situation admit of the probability of the removal of the dikes in the future, as the burden of the defendant's proof was that they are indispensably necessary to prevent the destruction of its right of way, roadbed, and tracks. Moreover, the injury to the plaintiff did not consist in now and then flooding her land with water, damaging possible crops; but it was the destruction of the freehold by the constant eating away of the protecting bank—a process as certain to continue as the annual rainfalls and the flow of water in a large river, and a result reduced to a demonstration more than three years before this suit was instituted."

It is not for the railroad company which has suffered an injury to continue for a long term of years, during which the land has declined in value, or where losses have been sustained by a sale at a greatly reduced price, but which represented the then market value, to say that, should it conclude to remove or abate the nuisance, the original value would be restored, and this for two reasons: As to that part of the land already sold,

the sale terminated the plaintiff's title, and as to him there could be no restoration of values; while, as to that remaining unsold, its desirability and value may have ended and been minimized on account of the length of time that the nuisance has been allowed to continue. Certainly we cannot indulge such a presumption, and there is nothing in the testimony upon which to base such a conclusion.

The true measure of damages is compensation for the injury or loss sustained, and, as a general rule, in such cases the damages are measured by the depreciation in the market value of the property injured, where the injury caused by the nuisance is of a permanent nature, or of the rental or usable value, in case the injury is of a temporary or recurrent nature. 29 Cyc. 1275, and authorities cited. We have already shown that both the structures and injury are of a permanent nature, to which it may be added that the injury was one not of a recurrent character, but, instead, fixed and permanent, so long as used and operated by the railroad.

In discussing what damages for an injury may be recovered in a single action, Sedgwick on Damages (9th Ed.) sec. 95, says:

"A typical instance is an action against a railroad company for a nuisance caused by its embankment or other permanent structure. In such case, when the Constitution permits recovery, the great weight of authority is to the effect that the injured party may, and therefore must, recover compensation in one action for the entire loss. And where the building and operation of the railroad produces a nuisance, as by the pollution of the air by smoke, or by the obstructing a street by its tracks lawfully located, the rule is generally held to be the same. In some cases it is held that the plaintiff may recover prospective damages, treating the injury as a permanent one; and this election is not infrequently allowed in case of intermittent injury as by successive floods. But if he may, it is clear that he must."

Numerous authorities are cited by the author as supporting the rule announced, in addition to which may be cited the following: *Ottawa Gas, etc., Co. v. Graham*, 28 Ill. 73, 81 Am.

Dec. 263; *Chicago North Shore St. Ry. Co. v. Payne,* 192 Ill. 239, 61 N. E. 467; *Denison & F. S. Ry. Co. v. O'Malley,* 18 Tex. Civ. App. 200, 45 S. W. 227; *Porter v. Midland Ry. Co.,* 125 Ind. 476, 25 N. E. 556; *Fowler v. Des Moines & K. C. Ry. Co.,* 91 Iowa, 533, 60 N. W. 116; *Jeffersonville, etc., Ry. Co. v. Esterle,* 76 Ky. (13 Bush) 667; *Clark v. Lanier;* 104 Ga. 184, 30 S. E. 741.

In *City of Ardmore v. Orr,* 35 Okla. 305, 129 Pac. 867, negligent construction of storm sewers, whereby surface waters were diverted from their accustomed course and on account of which plaintiff's property was overflowed and damaged, was under consideration. It was held that the city in grading the streets and constructing the sewers was acting within its lawful authority; that the wrong consisted in negligently constructing the sewers with a capacity inadequate to carry off the surface waters; that if said sewers were enlarged, or additional sewers built sufficiently large to carry off the surface waters, no further injury would result, and it would not be presumed, its liability having been determined, that the negligent construction of said sewers would not be remedied so as to prevent further injury. The case is one readily distinguishable from the one under consideration, and is not opposed to the rule announced in the Moseley case.

In *Chicago, R. I. & P. Ry. Co. v. Davis,* 26 Okla. 434, 109 Pac. 214, it was held that, where the wrong is of a permanent nature and continuous, springing from the manner in which the ditch or channel is completed, and on account of the diversion of surface waters the land of an abutting proprietor is necessarily injured by such diverted water, the proprietor may treat the act of the railway company as a permanent injury and recover damages for the consequent depreciation of the value of his property. The opinion is one strongly fortified by authorities, and is in harmony with the conclusion reached in the Moseley case. It will be noted that the court quoted with approval from *Savannah, A. & M. Ry. Co. v. Buford,* 106 Ala. 303, 17 South. 395, in which the court said: "The roadbed

and embankment are permanent and continuous structures." No less so, in our opinion, is the roundhouse, the switches, the turntable, cinder pit, and other structures, the use of which so injuriously affected plaintiff's property. We therefore conclude that under the rule announced in *Gulf, C. & S. F. Ry. Co. v. Moseley, supra,* which in the instant case must control, the instructions given correctly stated the law defining the measure of damages.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.