GEORGE WALTHER

*v.*

CHICAGO AND WESTERN INDIANA RAILROAD COMPANY.

*Opinion filed April 17, 1905—Rehearing denied June 13, 1905.*

1. RAILROADS—*abutting owner cannot enjoin laying of tracks in street.* An owner of property fronting on a public street cannot enjoin a railroad company from laying tracks in such street in pursuance of authority from the city, which is vested by its charter with control of the street.

2. SAME—*owner cannot enjoin erection of a freight house on company's private property.* An individual cannot enjoin the construction of a freight house and switch tracks upon private property of the defendant railroad company across the street from complainant's property even though the locality has been for years exclusively a residence neighborhood, there being no showing that the buildings and tracks are not necessary for the proper carrying on of the business of the company.

APPEAL from the Appellate Court for the First District;— heard in that court on writ of error to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

Appellant filed a bill against appellee, the abstract of which is as follows:

"Orator, George Walther, represents that he is a resident, property owner and tax-payer of the city of Chicago, Cook county, Illinois, and is the owner in fee of the south two-thirds of lot 8 and all of lots 9 and 12, in block 7, of the subdivision known as Linden Grove subdivision in the city of Chicago, Cook county, Illinois; that the said property has a frontage on Lowe avenue, between Sixty-fourth and Sixty-fifth streets, of 216 feet and a depth of 234 feet; that orator purchased part of said property in 1874 and the balance prior to 1884; that during the year 1881 he constructed a dwelling house on said property, which has been ever since and still is his homestead; that the only means of access, either for carriages or pedestrians, to said property is by way of Lowe avenue; that said property, with the improvements

thereon, is reasonably and fairly worth $70,000; that said avenue is a public highway and one of the main thoroughfares of that part of the city; that for more than forty-five years last past the public has been in the uninterrupted use of the same, and that said avenue in the vicinity of orator's property is now, and has been for more than twenty years, strictly a residence avenue; that orator purchased said property and made the aforesaid improvements, and also erected a four-flat brick building thereon, at great expense, with special reference to and relying upon an unobstructed use of said avenue and that said avenue was to be used only as a residence avenue; that orator has received from said flat-building an annual income of about $1000; that the block in which orator lives is thickly built up with residences; that every lot in the block just across the avenue from orator's residence, facing Lowe avenue, excepting two, only, is improved with either a brick or frame dwelling house; that the immediate neighborhood of orator's property is composed of dwelling houses and is a closely built residence district; that orator and his family have up to the present time enjoyed the comforts of a quiet and peaceful residence neighborhood and the use of said Lowe avenue as a strictly residence avenue; that orator exhibits his bill against the Chicago and Western Indiana Railroad Company, a corporation, in behalf of himself and others similarly situated who may become co-complainants upon payment of their *pro rata* share of expenses; that said railroad company has recently purchased all of the property in blocks 8 and 13, in said Linden Grove subdivision, abutting on said Lowe avenue and between said Lowe avenue and its present right of way, a distance of about 230 feet; that said land purchased by the railroad company includes all the property west of its present right of way and east of the east line of Lowe avenue between Sixty-fourth and Sixty-sixth streets; that the title to orator's property and to the property so purchased by the railroad company is derived from a common source,

namely, the original proprietors of Linden Grove subdivision; that the plat of said subdivision was executed and recorded on the 9th day of January, A. D. 1857; that by reason of the exhibition and publication of said subdivision and plat, and by the sale of lots thereunder to the respective grantors of orator and said defendant, there has resulted, as between orator and said defendant, the right, in law, to have the said Lowe avenue remain absolutely and wholly open forever, of the same dimensions and to the same extent as delineated upon the subdivision and plat aforesaid; that said defendant leases the use of its right of way and the tracks constructed thereon to other railroad companies, namely, the Belt Railroad Company of Chicago, the Chicago and Eastern Illinois railroad, the Monon Route, the Wabash railroad and the Chicago and Erie Railroad Company, and by other railroad companies to orator unknown; that the said railroad companies use the said tracks for transporting freight; that the defendant threatens and is about to build a large freight house on its said property between Sixty-fifth and Sixty-sixth streets, west of its right of way and facing orator's property, and also threatens and is about to build side-tracks or switches connecting said freight house with the main track of its right of way abutting on the above mentioned avenue and contiguous to and fronting orator's said property; that defendant intends and proposes to erect a stone wall ten or twelve feet high on the east line of said Lowe avenue between Sixty-fourth and Sixty-sixth streets and opposite to orator's property; that the defendant also intends and threatens to fill in the property so purchased by it, as aforesaid, so as to bring the surface of the ground to the top of the stone wall above referred to; that the defendant threatens and proposes to construct eight side-tracks or switches on this elevated ground, all parallel with and contiguous to said Lowe avenue, and threatens and proposes to use said side-tracks or switches for storing freight cars which are used for outgoing and incoming freight consigned

in car lots; that said switch tracks will be used for similar purposes by other railroads, lessees aforesaid; that the said side-tracks to be used as a freight yard, as aforesaid, will accommodate approximately three hundred cars; that the defendant threatens and proposes to construct an entrance and driveway directly in front of orator's property, to be used by traffic teams, express and delivery wagons as a means of access to said cars; that owing to the elevation of said tracks the driveway will, of necessity, be built on an incline and will extend out into the street; that said freight house and switch tracks are to be used as a general freight depot and freight yards by the defendant and its lessees for receiving, unloading, shipping and handling freight; that in loading and unloading the large number of cars which will be stored in said freight yard a large number of heavy traffic teams drawing large express and delivery wagons will use the driveway, as aforesaid, thus changing the character of the neighborhood, blocking up said public avenue in front of orator's premises, interfering with the free access thereto and greatly depreciating the value thereof; that the establishment of the freight depot and switch tracks abutting on said residence avenue and in said residence neighborhood is capricious, unjust, unnecessary, wrongful, oppressive and unlawful to orator and will cause him irreparable injury; that the said freight house will greatly reduce the value of orator's premises and of abutting property, and will necessarily reduce the rents received from his said flat-building; that some of orator's tenants now in his said flat building threaten to move if the construction of the proposed freight depot and switch tracks is commenced; that the defendant proposes to use said switch tracks and sidings along and contiguous to the said avenue in front of orator's said premises for storing, switching and moving freight cars, using steam locomotives in and about such switching and moving, and that most of said switching will be done in the night time; that if the defendant carries its said threats and pur-

poses into execution the property of orator will be greatly and irreparably damaged by reason of great noise attendant upon the operation of locomotives; that the puffing of the engines, the ringing of bells of locomotives so close to said avenue, the emission of hurtful and offensive gases, smoke, soot, cinders and coal dust from the said engines pouring down upon and borne by the wind into orator's dwelling house and premises and filling the house with smoke, soot and cinders will damage and soil the clothing, furniture, curtains and linens in orator's residence and in the flat-building, will destroy the peace and comfort of orator and his family, will render the air offensive and unwholesome and the house uncomfortable and unhealthy as a habitation, and render it impossible for orator and his family to continue to occupy his said residence and premises as a family residence, greatly reduce the renting value of the premises and irreparably depreciate the value of said property; that if the defendant is allowed to carry out its said threats and purposes to construct a freight depot at the place aforesaid, where freight will be received for shipment, handled, loaded and unloaded, the heavy traffic teams and express and delivery wagons carrying the freight to said depot for shipment and receiving freight from said depot for delivery at different places in Englewood and vicinity will block up said avenue in front of orator's premises and interfere with the free access thereto, and make a halting place in front of the said premises for heavy traffic teams, express and delivery wagons traveling over said Lowe avenue while waiting for an opportunity to load or unload their goods; that defendant has taken and is taking active measures to carry its said threats and purposes into execution, has advertised for sale all of the residences and buildings standing on said two tracts of land above described, caused notices to be served on the tenants of said buildings to vacate the same before the first day of April, 1903; that the purchasers of said buildings are taking steps to move the buildings purchased by them, and

for that purpose moving-blocks and rollers have been piled upon said premises; that the defendant has caused plans of the proposed freight depot and side-tracks to be prepared by its engineers and architects, and has instructed its officers and agents to proceed at once with said work and construct said freight depot and switch tracks, and orator has good reason to fear, and does fear, that said defendant will carry its intention and threat into execution unless restrained by injunction; that the effect of the construction and use of such freight depot and switch tracks, if the same be not prevented, will be to deprive orator and the occupants of his said building of free access to the aforesaid premises and the free us of the said avenue; will hinder and deter traffic and the free passage of carriages and other vehicles along and on said avenue in front of orator's premises; will render orator's premises, including his said flat-building, untenantable from the smoke, noise, offensive gases and other annoyances that will arise from the proposed use by the defendant and its lessees of the land above described; will completely change and alter the character and condition of the said avenue and neighborhood; will cause irreparable injury to orator; will reduce the value of his said property at least one-half; will prevent the advantageous renting of said flat-building and reduce the rents at least one-half, and will in many other ways cause serious and continuing damage to orator and his property; that such damage will amount to many thousands of dollars, and will be beyond legal remedy or relief if not prevented by the court. Prayer for injunction against said Chicago and Western Indiana Railroad Company, its officers, clerks, attorneys, agents, servants, lessees, licensees and employees, restraining them from further proceeding, in any way, in the erection and construction of a freight depot or freight house," etc.

The defendant demurred to the bill, which the court sustained and dismissed the same at complainant's costs. The Appellate Court affirmed the decree of the superior court.

ANGELL & PADDOCK, for appellant.

EDGAR A. BANCROFT, (WILLIAM J. HENLEY, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The demurrer to the bill being sustained, the sole question is whether it states such a cause of action as will entitle appellant to the relief sought.

It is insisted by counsel for appellant that the construction and operation of freight tracks and yards, with the attendant consequences, though not a nuisance *per se,* become such by reason of their being located in a neighborhood which had for years been used for residence purposes. Many cases are cited in support of this contention, but upon examination they are all found to be cases of threatened private nuisances. A railroad company is a common carrier of passengers and produce. It owes a duty to the public to perform its functions promptly and faithfully, and in order to perform that duty it is necessary that it should have sufficient room for freight yards, houses, depots, switch tracks and other necessary facilities and conveniences. The duties, rights and relations of railroad companies to the public and private individuals have been before this court on many occasions. At the April term, 1859, in the early case of *Moses* v. *Pittsburg, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 515, the question arose as to the right of city authorities to use certain streets in the city of Chicago for railroad tracks, and it was there held that where by a city charter local authorities are vested with exclusive control over the streets, and those authorities grant permission to locate railroad tracks along a street, the owner or occupant of property fronting on the same cannot enjoin the laying of such tracks. That case has been followed by a line of decisions since rendered, the latest case on the point being *People* v. *Blocki,* 203 Ill. 363.

The case made by this bill is not as strong as the cases referred to. If the putting down of a railroad track in a public street cannot be restrained by the public, much less could a private individual, by injunction, prevent the erection of freight houses and switch tracks upon the private property of the railroad company. Nor do we conceive that the fact that such tracks and buildings were erected in a neighborhood which had for years been used exclusively for residence purposes could change the legal rights of the parties. Lowe avenue, as shown by the bill, extends north and south and is about sixty feet wide. Appellant's property is on the west side of it and fronts east on the avenue, between Sixty-fourth and Sixty-fifth streets. The property of the railroad company upon which it is proposed to build the freight houses and switch tracks is on the east side of the avenue, opposite appellant's property. The street in front of the appellant's house would not, therefore, be disturbed, except that an elevated driveway would be erected for the purpose of getting on to the elevated tracks, and that driveway would be on the opposite side of the street. It would not interfere with appellant's property more than any other constant use of the street would. Beyond the fact that yards are to be built in a residence neighborhood there is nothing shown which will cause any greater disturbance than is ordinarily occasioned around railroad yards. There is nothing in the allegations of the bill to show that the yards contemplated are not necessary for carrying on the proper business of the company or that it would be convenient or practicable for it to locate them in any other place.

We think the allegations of the bill were insufficient to entitle the complainant to the relief prayed. The demurrer was properly sustained, and the decree of the Appellate Court will be affirmed.                    *Decree affirmed.*