## CHARLES MATTHIAS v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

March 20, 1914.

Nos. 18,393—(251).

**Operation of railway — private nuisance.**
1. The smoke, noise and disturbance which ordinarily attend the proper operation of a railroad at and between stations should not be held a private nuisance to adjacent property affected thereby.

[1] Reported in 146 N. W. 353.

---

Note.—On the question of the liability of a railroad for creating nuisance by roundhouses and yards, see note in 32 L.R.A.(N.S.) 374.

As to the right under constitutional provision against "damaging" private property for public use without compensation, to compensation for consequential damages to property, no part of which is taken, from smoke, noise, dust, etc., incident to ordinary operation of railroads, see note in 40 L.R.A.(N.S.) 48.

The general question as to the effect of legislative authority upon liability for private nuisance is treated in a note in 1 L.R.A.(N.S.) 49.

**Same — adjacent landowner.**

2. But as to such incidental railway facilities as shops, roundhouses and switchyards, of the character here involved, the location and operation of which is not determined by public convenience or necessity, the railroad is liable, if thereby a nuisance is imposed upon an adjacent landowner, even though the location of the facility be proper and the operation thereof duly careful.

**Same — compensation — Constitution.**

3. If the ordinary careful location and operation of such railroad facility as the one here in question creates a private nuisance upon adjacent property, such property is thereby damaged within the purview of the Constitution entitling the owner to compensation.

**Question for jury.**

4. Under the evidence the question whether the operation of defendant's switchyard imposed a private nuisance upon plaintiff was for the jury.

Action in the district court for Hennepin county to recover $1,900, being a depreciation of $10 per month in the rental value of plaintiff's property and $1,800 in the value of his real estate by the operation of defendant's switching yard. The answer was a general denial. The facts are stated in the opinion. The case was tried before Steele, J., who, at the close of plaintiff's case, granted defendant's motion to dismiss the action on the ground that plaintiff had failed to establish any cause of action against defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*James A. Peterson* and *Adolphe C. Peterson,* for appellant.
*James L. Erdall* and *Alfred H. Bright,* for respondent.

HOLT, J.

For more than 25 years defendant has owned a 66-foot right of way near what is now the northerly limits of the city of Minneapolis. Upon this right of way is located its main line of railway running west. It crosses Queen Avenue North, a street running north and south, at 47 Avenue North. Proceeding westerly it angles north about 15 degrees. Prior to 1909 the land north of the railroad between Humboldt and Thomas avenues, the former being nine blocks east and the latter three blocks west of Queen avenue, had been platted.

125 M.—15.

South of the right of way the land is also to a large extent platted into city lots. Very few lots were ever built upon. Indeed, the general appearance along the right of way, in the neighborhood described, is that of a farming or truck gardening district. In 1909 plaintiff bought three lots fronting west on Queen avenue; the northerly boundary of these lots is the southerly boundary of defendant's right of way. Soon after the purchase he built a small house thereon which has since been his home. A barn has been erected and some other improvements have been made on the lots. It appears that recently defendant acquired by purchase a strip of land several hundred feet in width immediately north of its right of way, and extending from Humboldt avenue westerly over a mile. Thereafter, in March, 1912, it secured from the city council of Minneapolis the vacation of all streets in the platted portions of this strip. The object of defendant was to locate a switchyard for handling, principally, grain shipments from the west. The yard was constructed in the summer of 1912 and consists of six or seven tracks north of and parallel with the original main track and as close thereto and to each other as they well may be for safe operation. These tracks constitute the receiving yard. Some 200 feet north of these and parallel are some seven or eight tracks, termed the classification yard. All these tracks have suitable switches, leads and passing tracks connecting with each other and the main track. The lead track approaching the classification yard from the west is up grade until it reaches the hump, a point about 600 feet northerly from plaintiff's dwelling. From thence east it is down grade so that cars shunted over the hump will of their own motion run down into the classification yard. As freight trains come in from the west the cars are placed in the receiving yard; and then in the evening a switch engine with crew comes and pulls a string of cars west of the switch for the lead to the classification yard, backs them up the lead to the hump, uncouples and kicks or shunts them in on the proper track to be thereafter taken to the different elevators or places of destination. This work generally lasts until morning. Thus moving cars during the stillness of the hours of night creates a great deal of unusual noise and disturbance. The cars shunted down grade slam into cars previousl⌐

set out upon the tracks, slack runs in and out with a loud clatter as trains are started and stopped, and the exhaust of the locomotive becomes at times very penetrating.   It is plain that the noise is a serious disturbance of the rest and comfort of plaintiff who lives so close to the tracks.   Plaintiff sues to recover damages for depreciation of the rental value of his property by the operation of this yard up to the commencement of the action, and for permanent injury, on the ground that the yard is a private nuisance to him.   He does not contend that the impairment of the use, enjoyment and value of his property might be avoided or lessened by the exercise of proper care in operating the switch yard.   In addition to the disturbing noises incident to the operation of the yard, plaintiff claims that more soot, smoke and cinders are cast upon his premises than was the case before the yard was established.   When plaintiff rested the action was dismissed, on defendant's motion.   Plaintiff excepted to the ruling and appeals from the judgment.

Before the adoption of the constitutional amendment, providing that compensation must be paid for damaging or destroying private property for public use, as well as for taking the same, it was established by three decisions of this court that no action lies against a railroad company for damages unavoidably resulting to near-by property from the noises, smoke or jarring incident to a proper operation of its railroad upon lands in which the person inconvenienced has an interest.   Rochette v. Chicago, M. & St. P. Ry. Co. 32 Minn. 201, 20 N. W. 140; Adams v. Chicago, B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L.R.A. 493, 12 Am. St. 644; Carroll v. Wisconsin Central R. Co. 40 Minn. 168, 41 N. W. 661.   In the last-mentioned case Chief Justice Gilfillan states:  "Railroads are a public necessity. They are always constructed and operated under authority of law. They bring to the public great benefits; to some persons more, to other persons less.   The operating them in the most skilful and careful manner causes to the public necessary incidental inconveniences, such as noise, smoke, cinders, vibrations of the ground, interference with travel at the crossings of roads and streets, and the like.   One person may suffer more from these than another.   *   *   *   But the difference is only in degree, not in kind.   Such inconveniences are

common to the public at large. If each person had a right of action because of such.inconveniences, it would go far to render the operating of railroads practically impossible." With the exception of the courts of Nebraska we believe the above rule has been applied, in the face of constitutional provisions similar to the one we now have so far as the operation of a railroad at and between stations is concerned. Reasons, more or less cogent, may be suggested for the rule. Public necessity seems to require a network of railroads penetrating everywhere, and, if every disturbance and inconvenience arising from the lawful and careful operation would give rise to a cause of action, it would disastrously affect the cost and efficiency of transportation. Furthermore along the route of the railroad the annoyance to near-by property owners from noise, smoke, and cinders even on lines of extensive traffic is intermittent and of short duration. A moment or two and the disturbance is over, the atmosphere is pure. Considering the public importance of railroads occasional and passing annoyances from their operation should be borne in silence by the individual subjected thereto. To be sure at stations and terminals the disturbance is more incessant and of longer duration, but it may also be said that the owner of property adjacent thereto has also the benefit of sharing in the advance in values which so often attend the location of depots and railroad terminals and trackage. The greater inconvenience is likely to be offset by greater advantages. Usually population centers around railroad stations and terminal yards and in such neighborhoods.more or less smoke, dust, and distracting noises are prevalent. Factories, shops and mills find locations near and create the same discomforts in some degree. A person building a home on a city lot has no assurance that the adjoining lot-owner may not erect a factory or warehouse which may sadly interfere with the enjoyment and value of the home. The law does not redress every inconvenience or disturbance to which an owner or occupant may be put by a neighbor's use of his property. The location, the degree of annoyance, its duration and the time of its occurrence are all matters which bear upon the question of whether the law affords a remedy for the damage suffered.

It is not necessary to pursue this subject further, for plaintiff con-

cedes the soundness of the rule generally adopted that disturbance, smoke, dust and cinders from the ordinary operations of trains upon a railroad's right of way which reach adjacent properties, causing discomfort and damage to the owners or occupants thereof, do not give rise to a cause of action. But he insists that a different rule applies to such facilities in railroading as shops, roundhouses and switch yards, so that, when a railroad company selects such a place for these that the operation thereof creates a private nuisance to owners of near-by property, a cause of action arises in every case where a like injury inflicted by a private person would be actionable.

Courts have distinguished between the location and operation of a railroad between and at stations, and the location and operation of such incidental but necessary equipments as railroad shops, round-houses, and switch yards like the one here in question. These latter do not serve the public directly. Their location and operation is of no public concern, except as indirectly affecting the transportation problem. In selecting a place for these, the railroad acts as an in-dividual attending to his private business and must be responsible as such for injuries to the property rights of others flowing from such selection and subsequent operation. In other words, in the location and operation of these incidental transportation facilities the rail-road company has a free hand and may not shield itself from re-sponsibility for damage to others behind any rule of public necessity or authorization by law. It is different from freight houses and yards for receiving and delivering car load shipments. Public necessity, and sometimes statutes, demand that such be located for public conveni-ence. We therefore do not think decisions like Atchison, T. & S. F. Ry. Co. v. Armstrong, 71 Kan. 366, 80 Pac. 978, 1 L.R.A.(N.S.) 113, 114 Am. St. 474; Georgia R. & Banking Co. v. Maddox, 116 Ga. 64, 42 S. E. 315; Taylor v. Seaboard Air Line Ry. Co. 145 N. C. 400, 59 S. E. 129, 122 Am. St. 455; Beseman v. Pennsylvania R. Co. 50 N. J. L. 235, 13 Atl. 164, which state the broad doctrine that no redress is given to a private person who suffers from the con-sequences of an act authorized by law, are controlling here, even if sound.

The location of this switch yard must be conceded proper in the

sense that none other could well have been found where less people would be affected by its operation. But that does not, in our opinion, determine plaintiff's right to complain of injuries special to him. In Romer v. St. Paul City Ry. Co. 75 Minn. 211, 77 N. W. 825, 74 Am. St. 455, Chief Justice Start thus alludes to a well-established rule "that what is authorized to be done by law cannot be a public nuisance, yet it may be a private nuisance as to individuals who are specially injured thereby."

Did plaintiff show injuries special to himself? We have already stated that the testimony tended to show that during the nighttime the noise and disturbance from the operation of the switch yard were so loud, incessant, and distracting as to rob plaintiff and his family of sleep and rest; also that large volumes of smoke, cinders and dust were thrown upon his property and thereby its use and value almost destroyed. Section 8085, G. S. 1913, reads: "Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered." In Woods, Nuisances (3d ed.) § 611, it is said: "It is now well settled that *noise* alone, unaccompanied with smoke, noxious vapors or noisome smells, may create a nuisance and be the subject of an action at law for damages." And in section 505 it is stated that "smoke alone may constitute a nuisance." See also sections 495 and 497 to the effect that every one has the right to have air diffused over his premises in its natural state free from artificial impurities imparted by a neighbor; and that the property owner has the right to recover damages, not only for injuries affecting the corpus of his estate but also for such as impair unreasonably the enjoyment and use thereof. Lewis, Eminent Domain, § 237, pertinently asks: "What valid distinction can be made between discharging smoke or noxious gases in the atmosphere which find their way into the air of the adjoining lot and cause a nuisance, and the discharge of water or noxious liquids which flow upon adjoining property or percolate through its soil so as to create a nuisance upon the land? The oper-

ation of machinery may communicate vibrations to the air which make life a burden to those in the neighborhood by reason of the noise so produced and at the same time may communicate vibrations to the land which crack the walls and shake down the plaster of the houses in which they live. How can distinction be made between the two when both kinds of injury go to the extent of materially impairing the use and enjoyment of property?"

In Chicago, M. & St. P. Ry. Co. v. Drake, 148 Ill. 226, 35 N. E. 750, the court said it was not prepared to coincide with the view that noise and disturbance from railway yards were *damnum absque injuria.*

A case more frequently cited than any other on the proposition here involved is Baltimore & P. Ry. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. ed. 739, which was an action against the railroad company for damages on account of the erection and operation of a shop and roundhouse so near the church that its use by the plaintiff congregation was seriously impaired from the smoke, noise and steam emitted from the company's plant. There was a recovery. The court, after stating that the liability of the railroad company for the annoyance and discomfort caused is the same as that of individuals for similar wrongs, and that it was no defense to say that the shop and roundhouse were skilfully constructed and were necessary for the maintenance of the road authorized to run through the city, proceeds [page 331] : "Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. * * * It admits indeed of grave doubt whether Congress could authorize the company to occupy and use any premises within the city limits, in a way which would sub-ject others to physical discomfort and annoyance in the quiet use and enjoyment of their property, and at the same time exempt the company from the liability to suit for damages or compensation, to which individuals acting without such authority would be subject under like circumstances." In the opinion is the suggestion that the company might have selected another location where the injury to adjoining property would not have been so great. But it is not therefore to be inferred that if the railroad company, instead of locating

its roundhouse and repair shop adjacent to this large church edifice of an influential congregation in the heart of the city, had placed them up against the humble house of worship of a religious organization forced by stress of circumstances to seek a cheap location in the outskirts of Washington, compensation would have been denied for similar annoyance to the use and enjoyment of their church property. While suitable location has a bearing on the question it is not controlling. To properties in the heart of a city, dust, smoke and distracting noises are appurtenant, so to speak, and therefore they cannot be injured by like matters from the operation of a railroad to the same extent that properties in the sparsely-occupied and quiet suburbs are.

And as sustaining the view herein before expressed that railroad shops, roundhouses and switch yards like the one in question here stand on a different footing from tracks between stations, passing tracks, depots, freight-houses and yards for receiving and delivering shipments in respect to their location and operation being a private injury or nuisance which the law will redress may be cited: Cogswell v. New York, N. H. & H. Ry. Co. 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Spring v. Delaware, L. & W. R. Co. 88 Hun, 385, 34 N. Y. Supp. 810; Wylie v. Elwood, 134 Ill. 281, 25 N. E. 570, 9 L.R.A. 726, 23 Am. St. 673; Louisville & Nashville Terminal Co. v. Lellyett, 114 Tenn. 368, 85 S. W. 881, 1 L.R.A.(N.S.) 49. In the last-named case it is held that a terminal railway company in exercising the discretion conferred by the legislature to locate its yards and terminal facilities acts at its peril not to create a nuisance to neighboring property. There the plaintiff's property was 225 feet away from the original tracks; the terminals were located beyond these. The court says: "We are of opinion that, in so far as the growth and increase of travel and traffic into and through the station has brought discomfort to plaintiff, he is without remedy. In other words, the roads have the right to accommodate their increasing traffic and travel without liability, so long as their trains are operated without negligent disregard of the comfort and usable value of plaintiff's property, and, for this purpose, to lay such additional tracks, and switches into and through the station as may be required to

accommodate such travel and traffic, both passenger and freight, and it is only for the additional conveniences of roundhouses, sandhouses, coal bins, coal chutes and the switch yards and tracks necessary to operate such additional conveniences, which might be located elsewhere, though not so advantageously, perhaps, that the plaintiff can complain, if they materially damage plaintiff's property."

In Townsend v. Norfolk Ry. & Light Co. 105 Va. 22, 52 S. E. 970, 4 L.R.A.(N.S.) 87, 115 Am. St. 842, 8 Ann. Cas. 558, it was said: "Damage occasioned by the location of a power house (for the railway) does not stand upon the same footing as damage resulting from the operation of a railway along an unauthorized route." It may also be suggested that the property and persons affected by the location of shops, roundhouses and switch yards such as this are limited and circumscribed in extent; and that those annoyed by their operation do suffer differently from those exposed to the intermittent discomforts which attend the ordinary operation of trains. The injury to those affected by these incidental railway facilities may therefore be said to be special and peculiar. The noise and smoke from shops are incessant during the ordinary work day. And here the operation of the switchyard was continuously distracting during the night. See also Baltimore Belt R. Co. v. Sattler, 100 Md. 306, 59 Atl. 654, and Bramlette v. Louisville & N. Ry. Co. 113 Ky. 300, 68 S. W. 145. The distinction herein pointed out is also recognized in the late case of Roman Catholic Church of St. Anthony of Padua v. Pennsylvania R. Co. 207 Fed. 897, — C. C. A. —.

It would seem to follow that, if this switch yard, although properly located and operated, constitutes a private nuisance to plaintiff's use and enjoyment of his property, there is an injury to private property by a public use for which compensation must be made under the Constitution of this state as it now reads. Lewis, Eminent Domain, § 238, states: "If the use of property for public purposes produces a nuisance, those injured are entitled to compensation. * * * It is immaterial whether the particular use of the property is authorized by the legislature or not. The right not to be injured by a nuisance on adjoining land cannot be taken without compensation. The Massachusetts court has held that "the legislature may authorize

small nuisances without a compensation, but not great ones."
[Bacon v. City of Boston,] 154 Mass. 100, 28 N. E. 9; [Com. v.
Parks,] 155 Mass. 531, 30 N. E. 174; Levin v. Goodwin, 191 Mass.
341, 77 N. E. 718, 114 Am. St. 616. But where is the line to
be drawn? The courts of New Jersey, perceiving this difficulty,
have held that it cannot be drawn anywhere and have hence con-
cluded that the legislature can authorize all nuisances, both great
and small. Beseman v. Pennsylvania R. Co. 50 N. J. L. 235, 13
Atl. 164. But it is certainly more just, more logical and more in
keeping with the trend of modern decisions to hold that no right of
property can be taken, destroyed or materially impaired, without
compensation."

The decisions in Nebraska, which however go further than in any
other state, uniformly hold that injurious consequences to property
such as shown herein from the operation of a railroad is an injury or
damage within the constitutional provision requiring compensation,
and that without regard to whether it proceeds from the operation of
the railroad between stations, or from shops and the like. Chicago,
K. & N. Ry. Co. v. Hazels, 26 Neb. 364, 42 N. W. 93; Omaha & N.
P. Ry. Co. v. Janecek, 30 Neb. 276, 46 N. W. 478, 27 Am. St. 399;
Chicago, R. I. & P. Ry. Co. v. O'Neill, 58 Neb. 239, 78 N. W. 521;
Stehr v. Mason City & Ft. D. Ry. Co. 77 Neb. 641, 110 N. W. 701,
124 Am. St. 872; and Kayser v. Chicago, B. & Q. Ry. Co.
88 Neb. 343, 129 N. W. 554. Judge Hook in Mason City & Ft.
D. R. Co. v. Wolf, 148 Fed. 961, 78 C. C. A. 589, in summing up the
law as it obtains in Nebraska, states: "The right of recovery under
the state Constitution is not limited to those cases in which the prop-
erty of a private owner is actually invaded or appropriated by a rail-
road company. It extends to cases where the value of the property is
depreciated by the disturbance of some right either public or private
which the owner enjoys in connection therewith. * * * The
right of recovery includes damage to the property from noise, smoke,
cinders and vibrations of the ground and the obstruction or impair-
ment of the right of the owner to make use of public highways in the
vicinity."

Judge Caldwell in Chicago G. W. Ry. Co. v. First M. E. Church,

102 Fed. 85, 42 C. C. A. 178, 50 L.R.A. 488, in a situation some-what parallel to Baltimore & P. Ry. Co. v. Fifth Baptist Church, supra, observes: "The smoke, cinders and offensive smells and loud and protracted noises which constitute the nuisance to the plaintiff are not the usual and unavoidable result of the mere operation of the defendant's trains over its track laid in the street, but they result from other uses by the defendant of the street, and its tracks in the immediate vicinity of the plaintiff's property, which do not affect in a like injurious manner the public generally, or other abutting owners of property on the street."

We also refer to the exhaustive discussion of the subject found in the dissenting opinion of Justice Lewis, concurred in by Justice Lumpkin, in Austin v. Augusta Terminal Ry. Co. 108 Ga. 671, 34 S. E. 852, 47 L.R.A. 755, and the notes to Louisville & Nashville Terminal Co. v. Lellyett, 1 L.R.A.(N.S.) 49, and Tidewater Ry. Co. v. Sharter, 17 L.R.A.(N.S.) 1053. In Rainey v. Red River T. & S. Ry. Co. 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L.R.A. (N.S.) 590, 122 Am. St. 622, 13 Ann. Cas. 580, this language oc-curs: "Did the legislature intend to authorize a railroad running in the city of Austin to establish and operate structures of the character in question, so near to the Capitol as to render it unfit for the pur-poses for which it was constructed? The same question may be asked as to a court house of the county, the public school buildings and the churches of the city. We should be loathe to answer this question in the affirmative. Yet, if the statute empowers a railroad company to establish its shops in such proximity to a private dwelling as to depreciate its value and to bring great discomfort upon the occu-pants, no sufficient reason suggests itself to our minds why the same might not be done as to the Capitol, court house, and other public structures."

Cases relied on by defendant come nearly all within the principle conceded by plaintiff, namely, that in so far as disturbance, smoke and dust emanate from the operation of a railroad between and at stations there is no redress for the individual who may suffer in the use and enjoyment of his property. Twenty-second Corp. of Church of Jesus Christ of Latter-Day Saints v. Oregon S. L. R. Co. 36

Utah, 238, 103 Pac. 243, 23 L.R.A.(N.S.) 860, 140 Am. St. 819 was a case where increasing traffic required additional operating or passing tracks. Hyde v. Minnesota, D. & P. Ry. Co. 29 S. D. 220, 136 N. W. 92, 40 L.R.A.(N.S.) 48, related to tracks in connection with a properly-located depot. St. Louis, S. F. & T. Ry. Co. v. Shaw, 99 Tex. 559, 92 S. W. 30, 6 L.R.A.(N.S.) 1245, 122 Am. St. 663, is evidently not out of harmony with Rainey v. Red River, T. & S. Ry. Co. supra, for it relates to the necessary facilities and operations of trains at a properly-located station. It holds that personal discomfort to adjoining proprietors occasioned by the operation of cars in the station-yards cannot be made the basis of a cause of action against a railroad company, when there is nothing improper in its selection of the particular locality for its tracks or in the operation of its cars thereon and no depreciation in the value of the complainant's property therefrom. The court says: "It is hardly necessary to add that sidetracks at such stations are an essential part of the road, and are as much authorized and required as the main line and station. It cannot be held, therefore, that the mere location of such tracks and stations near the property of others gives rise to the liability here asserted. If so the same liability would arise to every one who might be annoyed by trains passing along the main line, for no reason could be given for liability in one case which would not be valid in support of it in the other; and yet it has often been held that no such liability can be sustained consistently with the law which authorizes the construction of such quasi-public works." Dolan v. Chicago, M. & St. P. Ry. Co. 118 Wis. 362, 95 N. W. 385, holds that the undesirable consequences to nearby property from the location of a railroad stock yard for receiving cattle for shipment, as required by statute, does not constitute a private nuisance if constructed and managed with reasonable care. Even in the absence of a statute on the subject public convenience, as already intimated, would, in most instances, require shipping stock yards near or at the station. The decisions cited from Pennsylvania, as suggested by Judge Lewis in Austin v. Augusta Terminal Ry. Co. supra, are controlled to a large extent by the wording of the constitutional provision of that state which guarantees compensation for injury to private property for

construction or enlargement of public works, thus excluding 'by implication, injury from the operation thereof. In Walther v. Chicago & W. I. R. Co. 215 Ill. 456, 74 N. E. 461, a demurrer was sustained to a bill in equity asking that the defendant railway be enjoined from establishing a switchyard in a residence neighborhood. In the absence of allegations that the location was improper and was not required by public necessity the court might well deny an injunction and leave the one whose property rights are damaged to his action at law. The opinion is silent on this phase of the question; but it would be reasonable to infer from other decisions of the courts of Illinois hereinbefore cited, or referred to in the citations, that the location and operation of a switchyard (which does not serve the public directly) so that it necessarily injures the use and enjoyment of private property by throwing thereon smoke and cinders, and causing unusual disturbances during the night time, would require the payment of compensation. See, also, Illinois Cent. R. Co. v. Trustees of Schools, 212 Ill. 406, 72 N. E. 39.

It is claimed that under Romer v. St. Paul City Ry. Co. supra, decided subsequent to the amendment of the Constitution, securing private property against damage or destruction by public use, as well as against the taking thereof for such use, without compensation, there can be no recovery here. It will be noticed, however, that the defendant in that case, a street railway company, was authorized and required to operate its cars upon the street. The disturbance created came mostly from the movement of the cars after they passed out of the barn and onto the street, and the court seems to place the refusal to regard the car barn as a nuisance upon the ground that the discomforts to plaintiff were essentially the same as those suffered by others where the car line turns corners. The court also distinguishes a commercial steam railroad from a street railway as to the consequences to adjacent property rights and therefore did not consider the case of Baltimore & P. Ry. Co. v. Fifth Baptist Church, supra, a controlling guide. The point that under our Constitution the right to compensation is given where damage to private property results from public use was not there raised, nor could it be; for section 6137, G. S. 1913, provides that no street railway company shall exer-

cise the right of eminent domain within the limits of a city or village. In the case of the maintenance of a private nuisance by a street railway within the city limits, the court could not well refuse to abate the same if requested, even though its maintenance might almost be a public necessity. But in the case of a commercial steam railroad the court might well refuse to abate if the railroad desired to exercise its right of eminent domain. That the constitutional amendment referred to broadened the protection of private property cannot be doubted. That there need be no physical invasion of property in order to give a right to claim compensation for damage to the same from public use is now established. Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L.R.A.(N.S.) 741. That case would be decisive of this appeal in plaintiff's favor, had it appeared that the vacated Queen avenue had been opened or laid out across the original right of way.

We are of the opinion that it was a question for the jury upon this record whether the disturbances and loud noises proceeding from the operation of this switchyard during the night time together with the smoke, dust and cinders thrown upon plaintiff's premises were such as to seriously interfere with and impair the enjoyment and value thereof which existed previously to the operation of the switchyard. It was therefore error to dismiss the action.

Judgment reversed.