[Civil No. 1731.   Filed June 3, 1920.]

[190 Pac. 85.]

# ARIZONA HERCULES COPPER COMPANY, a Corporation, Appellant, v. PROTESTANT EPISCOPAL CHURCH CORPORATION OF ARIZONA, a Corporation, and RAY CONSOLIDATED COPPER COMPANY, a Corporation, Appellees.

1. NUISANCE—CONSTRUCTION OF ORE-BINS CLOSE TO CHURCH NOT ACTIONABLE.—A mine had the right to construct ore-bins at the mouth of its shaft on its own property, and the fact that they were in close proximity to a church, and that in their reasonable use the noise therefrom disturbed public worship or other functions of the church, and thereby diminished the value of the church's property, gave the church no right of action for damages.

2. EMINENT DOMAIN—TAKING LAND FOR TRACKS BY MINING COMPANY GOVERNED BY PRINCIPLES APPLIED TO COMMON CARRIERS ACTING IN PRIVATE CAPACITY.—Where a mine condemns property and lays tracks for its private use, the principles applied to common carriers when acting in their private capacity should be adopted in fixing the liability of the mine for damages to private property.

3. EMINENT DOMAIN—MINE CONSTRUCTING PRIVATE TRACKS ON HIGHWAY LIABLE FOR DAMAGES BY REASON OF NOISE, SMOKE, ETC.—A mine which condemns a small strip of land for a track and in the general plan of construction intends to construct several other tracks on a highway, the tracks being for the private use of the mine, the rule of incidental or consequential damages should be extended to all the tracks and their operation, and the land owner is entitled to damages by reason of noise, smoke, cinders, vibrations, etc.; the improvements amounting to a private nuisance, under Constitution, article 2, section 17, Civil Code of 1913, paragraph 3087.

---

3. On right to compensation in eminent domain proceedings on account of damages to part of tract not taken from smoke, noise, dust, etc., incidental to the operation of a railroad, see notes in 109 **Am. St. Rep.** 914, 38 **L. R. A.** (N. S.) 497, and **L. R. A.** 1916E, 445.

3. Whether consequential damages to property from proper exercise of governmental powers is a taking of property, see note in 4 **Ann. Cas.** 1185.

3. Whether noise arising from lawful business constitutes nuisance, see notes in 4 **Ann. Cas.** 378; 19 **Ann. Cas.** 993; **Ann. Cas.** 1915B, 1059.

4. EMINENT DOMAIN—AMENDMENT ALLOWED AFTER VERDICT.—Where in eminent domain proceeding defendant alleged damages of $500 and jury found damages to be $910.50, the court could after verdict amend the answer to conform to the proof, under Civil Code of 1913, paragraph 422.

5. EMINENT DOMAIN—FAILURE TO RULE ON MOTION TO AMEND ANSWER AFTER VERDICT AND ALLOWING JUDGMENT FOR MORE THAN PRAYED, NOT REVERSIBLE ERROR.—In a proceeding to condemn land, where defendant alleged damage of $500 and verdict was for $910.50, failure of the court to formally grant a motion after verdict to amend the answer to conform to the proof was not reversible error, in view of Constitution, article 6, section 21, where the court treated it as granted by entering judgment upon the verdict in the larger amount without objection by the plaintiff; the failure to formally rule being at most a procedural matter not affecting the merits of the case.

APPEAL from a judgment of the Superior Court of the County of Pinal. O. J. Baughn, Judge. Affirmed.

Mr. George J. Stoneman and Mr. W. L. Barnum, for Appellant.

Messrs. Armstrong & Lewis and Mr. E. P. Patterson, for Appellees.

ROSS, J.—This is a condemnation proceeding whereby the appellant mining company, hereinafter designated plaintiff, sought to condemn a right of way for a steam railway over the property of appellee, hereinafter designated defendant.

The defendant church, in 1914, obtained from the Ray Consolidated Mining Company, the owner thereof, a fifty-year lease of a lot or parcel of land situated between the railroad depot and on the east side of the main highway or street leading therefrom to the town of Ray, and constructed thereon a church building to be used for religious, educational and social purposes. Thereafter, on May 20, 1918, the plaintiff, finding it necessary for the successful operation of its mines, constructed at or near shafts on its

mines, ore-bins and in pursuance of a general plan, proposed and undertook to construct three railroad tracks leading from ore-bins to the main line of the Ray and Gila Valley Railway Company. The church building and grounds were about seventy-five feet from ore-bins, and the three tracks passed it on the west, two of them being entirely in the main highway or street leading from the town of Ray to the railroad depot, and the other passing over the southwest corner of the church property within ten feet and two inches of the church wall. The strip of land taken is very small, the right of way extending over it being about eighty feet long. This proceeding is to condemn this particular piece of land. Ore-cars and steam engines are to be operated on all three of these tracks for the general purposes of conveying supplies to the mines and ore-bins and taking from the ore-bins and mines the products of the mines. It is agreed that the life of the lease is the entire value of the land. The Ray Consolidated Mining Company defaulted, and therefore claims nothing as the owner of the fee. The only question litigated was one of damages.

The defendant in its answer adopted the theory that because the three tracks were included in the general plan of construction by plaintiff they in fact were but one improvement, and because one of the tracks was on defendant's property, the same rule of incidental or consequential damages should be extended to all the tracks and their operation. It was accordingly alleged in the answer that—

"By the operation of said trains through, over, and along the property of this defendant [the plaintiff] will interfere with the access to the property of this defendant of the communicants and attendants upon the services had in the church, . . . and by reason of the construction, operation, and use of said railroad of the plaintiff passing through, over, across, and along the property of this defendant, the defendant's

church building and leasehold estate will be rendered of no value as a place of worship and for the holding of the meetings of the various organizations conducted by the defendant therein. That the ringing of bells, sounding of whistles, the blowing off of steam, the loud puffing of plaintiff's locomotive engines, combined with smoke, dust, and foul, noxious, and offensive odors emitted from plaintiff's engines, and which will enter the church, and the noise and rattle of its trains as the result of stopping them at points immediately adjacent to the property of this defendant, will constantly disturb religious exercises and meetings in said church, and will render the said church and the said land and leasehold interests of this defendant of no value whatever. That the operation of said trains of this plaintiff within a short distance of the walls of said church will damage and destroy the said church by shaking down and breaking the adobe walls of which it is constructed.''

The plaintiff specially demurred to the above allegations of damages, asserting that they ''do not constitute just, proper or legal ground of damage, . . . and are not a proper basis of damages to be considered by the court or jury in this case.'' The same objection was made to the introduction of evidence in support of the allegations of damages, and finally plaintiff excepts to instructions of the court submitting to the jury these elements of damages.

The Constitution, article 2, section 17, provides that—

''No private property shall be taken or damaged for public or private use without just compensation. . . . ''

The statute (paragraph 3087, Civ. Code) points out what the compensation shall consist of, as follows: (1) The value of the property taken or condemned and the improvements thereon; (2) incidental damages or depreciation in value by reason of the severance and the construction of the improvements in the manner proposed by plaintiff, to the land not taken.

In a proper case these may be offset by benefits, but, as there are none in this case, that feature will not be considered.

As already indicated, the controversy is over the compensation sought for incidental damages occasioned by the taking of a small strip of land for the right of way for one of the tracks, and for the operation of the other two tracks, upon the public street adjacent to defendant's property.

Plaintiff suggests that a different rule of compensation should be applied in this case than in the ordinary one, for the reason that the defendant knew when it entered the mining camp of Ray that the dominant interest was mining, to which every other interest was or should be subservient, and that, having placed its house of worship where it did, it ought not to be permitted to complain when the chief industry of the community, in its growth and development, encroached upon or inconvenienced or incidentally injured its property. To a limited extent, this contention is unquestionably correct. Plaintiff had the undoubted right to construct its ore-bins at the mouth of its shaft on its own property, and to use them as a means to facilitate the handling of its ores. The fact that the bins were in close proximity to the church, or that in their reasonable use the noise therefrom might have a tendency to disturb public worship or other functions of the church, and thereby diminish the value of defendant's property, would not give rise to a cause of action.

"It has been held that every land owner has the right to develop and use the natural resources of his land, and in the absence of negligence is not liable for consequences incidental to such development and use." *Brede* v. *Minn. Crushed Stone Co.,* 143 Minn. 374, 173 N. W. 805.

This rule has special application to mines, oil wells and stone quarries that must be operated at a fixed

place. However, defendant does not claim any damages or compensation on account of the location of the ore-bins or the noise or inconveniences occasioned thereby. When a mine owner seeks a right of way to his mines for the purpose of facilitating his operations, and in doing so creates conditions the natural and logical result of which is to inflict damage upon his neighbor's property, we apprehend a different rule applies. While in this case it is proposed to build on the right of way condemned and along the street adjacent to defendant's property railroad tracks upon which trains are to be moved by means of locomotive engines, the utility is entirely of a private nature. It is not to be a common carrier. It will serve only the plaintiff as an ore and supply train. The way sought and taken is, therefore, nothing but a private way.

"He is serving himself in his own way, and has no right to claim exemption from the natural consequences of his own act. The interests in conflict in this case are therefore, not those of the public and an individual, but those of two private owners who stand on equal ground as engaged in their own private business." *Robb* v. *Carnegie & Co.*, 145 Pa. 324, 27 Am. St. Rep. 694, 14 L. R. A. 329, 22 Atl. 649.

It would seem from reason that the principle applied to common carriers when acting in their private capacity should be adopted in a case of this kind. The rule in such cases is stated by 1 Lewis on Eminent Domain, third edition, 450, as follows:

"On general principles, when railroad appurtenances, such as a roundhouse, switchyards, repairshops or terminal plant, cause a nuisance to a neighboring property by reason of noise, smoke, cinders, vibrations, etc., there may be a recovery. But there are authorities to the contrary."

In *Killam* v. *Norfolk & W. Ry. Co.*, 122 Va. 541, 96 S. E. 506, after quoting the above language the court commented:

"Examination of the authorities cited by the learned author last quoted *pro* and *con* satisfies us that the text is supported by the greater weight of authority, and is impregnably sustained by reason and upon principle, where the switchyard operation complained of does not serve a passenger station or freight depot, so that such operation is not required of the railroad company in the discharge of its public duty in connection with such station or depot."

The leading case announcing this rule is *Matthias* v. *Minneapolis etc. R. Co.,* 125 Minn. 224, 51 L. R. A. (N. S.) 1017, 146 N. W. 353. This is what is known as "a switchyard" case, and it holds, even though the railroad company did not take any part of the adjacent land owner's property, still it was liable to him for incidental damages caused by smoke, cinders, noise and vibrations.

In a later case, *Stuhl* v. *Great Northern Ry. Co.,* 136 Minn. 158, L. R. A. 1917D, 317, 161 N. W. 501, in commenting on the Matthias case, it was said:

"In that case defendant was held liable in damages for construction and operation of a switchyard near plaintiff's home, although it was held that the location was a proper one. It was said that 'while suitable location has a bearing on the question it is not controlling' that the 'right not to be injured by a nuisance on adjoining land cannot be taken without compensation' "—quoting Lewis on Eminent Domain, § 238.

In *Southern Ry. Co.* v. *Fisher,* 140 Tenn. 428, 205 S. W. 126, it is said:

"The true test for distinction between cases of liability and nonliability of a railway company for the maintenance of a nuisance in the way of switch tracks is: Was the company acting in its private capacity, as distinguished from its public function, when operating the claimed nuisance?"

We take it that the rule founded upon public policy and necessity of exempting a common carrier from

liability for incidental damages to property adjacent to its right of way by reason of noise, smoke, cinders, vibrations, etc., while operating at public stations, or on tracks between stations, is not applicable where these conditions are brought about by the same utility in furtherance of its own private ends.

The present plaintiff could in no event invoke the protection of the rule of exemption sometimes extended to public utilities, because it is not a public utility and does not seek access to its mine as a servant of the public, but solely in its private capacity and for its own private use and benefit. In such circumstances, we conclude that the elements of damage alleged in the complaint, to which objection was taken, were such as the law would permit to be proved as tending to show that the improvements made by plaintiff amounted to a private nuisance and, as such, depreciated the value of defendant's property. 10 R. C. L., p. 71, § 62.

Until now we have treated this case as though no part of defendant's premises had been invaded or taken. Where there is an actual taking, under constitutions and statutes like ours, the almost universal rule is that the land owner is entitled to incidental damages to the land not taken, and that such damages may include the diminution in market value caused by the operation of the road, taking into consideration danger from fire, noise, smoke and vibrations. *Lewisburg etc. Co.* v. *Hinds,* 134 Tenn. 293, L. R. A. 1916E, 420, 183 S. W. 985; *Idaho-Western Ry. Co.* v. *Columbia Conference,* 20 Idaho, 568, 38 L. R. A. (N. S.) 497, 119 Pac. 60, 10 R. C. L., p. 155, § 136; *Richards* v. *Washington Terminal Co.,* 233 U. S. 546, L. R. A. 1915A, 887, 58 L. Ed. 1088, 34 Sup. Ct. Rep. 654 (see also, Rose's U. S. Notes).

The rule applied in estimating the depreciated value of land left is stated by Sutherland on Damages, volume 4, section 1065, as follows:

"If the land is rendered less valuable because it is exposed to fire, or if access is rendered more difficult, or if the use of the remainder is more inconvenienced by reason of the railroad, or if its value is depreciated by the noise, smoke, or increased dangers caused by such use, all these are to be included in the estimate of damages; not that witnesses are to be called upon to estimate the damages for each or any of them, for, though they enter into the estimates, the question is, What is the market value of the land without, and what is the market value of the remainder of the piece with, the railroad? In other words, what is the value of the piece which is taken, and how much is the residue depreciated in its market value by its separation and by the construction of the railroad? These two sums, added together, cover the amount of compensation to which the injured party is entitled."

And again in section 1066:

"Where a part has been taken for a railroad it is proper to consider all the inconveniences from the sounding of whistles, ringing of bells, rattling of trains, jarring of the ground, from smoke, invasion of privacy, and the deprivation of light, means of access, and like matters so far as they severally arise from the use of the strip taken and opened up to use, excluding all common and indirect damages; that is, such as affect the owner in common with all other members of the community."

We conclude the demurrer was properly overruled. The evidence objected to was competent and material, and the instructions criticised were a correct statement of the law applicable under the facts of the case.

Objection is made that the judgment for land actually taken is erroneous, in that it exceeds the amount claimed by defendant in its answer. There is perfect agreement that during the trial plaintiff, under permission of the court, amended its complaint, enlarging the area of ground to be taken or condemned. The answer which claimed the value of the land origi-

nally sought to be condemned to be $500 was not amended or asked to be amended at that time. The verdict of the jury fixed the value of the land taken at $910.50. Whereupon defendant moved the court to allow its answer to be amended to conform to the proof by substituting as the value of the land taken $1,200 for $500, as originally claimed. The court reserved its ruling on this motion. This occurred June 20, 1918. Thereafter, on July 1st, plaintiff filed its motion to set aside verdict, but did not suggest therein that the verdict was excessive. Again on December 7, 1918, it filed a motion for a new trial without urging the excessive verdict and judgment as a ground. The point is first made in this court. We think the failure of the court to act on motion to amend answer to conform to proof and to grant same was clearly an oversight, and it should be so treated. The statute (paragraph 422, Civ. Code) empowers the court to permit amendments of pleadings at any stage of the trial. The motion, therefore, did not come too late, and, the court having treated it as granted by entering judgment upon the verdict for the larger amount, and the same having been acquiesced in, or at least not objected to, at the time by plaintiff, we think we too should treat it as though the motion to amend answer had been formally granted and entered. The failure of the court to formally rule upon the motion does not go to or affect in any way the merits of the case. It was at most a procedural matter; and, while technically it should have received attention, we think the error is such as the Constitution (article 6, section 22), contemplates as insufficient reason to reverse the case.

The plaintiff made a number of assignments upon the refusal of the court to give instructions requested by it. These instructions contain propositions of law the converse of those given by the court and hereto-

fore considered. For that reason, a consideration of them separately is not deemed necessary. The form of the verdict is also criticised. But it seems to be in substantial conformity with the law.

The judgment is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.